IN RE JOSHUA S.*
(AC 32531)

Lavine, Beach and Pellegrino, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued February 10—officially released April 5, 2011

*Thomas B. Pursell*, for the appellants (proposed intervenor Daria H. et al.).

*Arthur L. Ledford,* for the appellant (respondent mother).

*Tammy Nguyen-O'Dowd,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* former attorney general, and *Benjamin Zivyon,* assistant attorney general, for the appellee (petitioner).

*Gloria L. Harris,* for the minor child.

*Opinion*

BEACH, J. The foster parents and would-be intervenors, John H. and Daria H., appeal from the trial court's denial of their motion to intervene into the case when the court was considering transferring guardianship. On appeal, the foster parents claim that the court (1) abused its discretion by denying their motion to intervene in their capacity as foster parents and (2) erred by not conducting a hearing to determine if exceptional circumstances existed such that they would qualify to intervene as next friends. We conclude that we do not have jurisdiction to entertain the foster parents' claims, and, thus, dismiss their appeal.

The following facts and procedural history are relevant to our resolution of this appeal. Joshua S. was born on June 6, 2009, and tested positive for cocaine at delivery. His mother, who admitted to using heroin and cocaine during her pregnancy, also tested positive for cocaine at delivery. She further admitted that she had a long history of substance abuse, mental health problems, prostitution and homelessness. On June 29, 2009, the petitioner, the commissioner of children and families (commissioner), filed a petition alleging that Joshua S. was neglected and also filed a motion for an order of temporary custody. An order for temporary custody was granted on July 2, 2009. Joshua S. was then released from the hospital and immediately placed into the care of the foster parents in July, 2009. On

August 5, 2009, the court, *Hon. Frederica S. Brenneman,* judge trial referee, determined that Joshua S. was neglected and placed him in the care and custody of the commissioner.

On April 22, 2010, counsel for Joshua S. filed a motion to modify the disposition to transfer guardianship of him to his maternal great aunt in Florida. On April 29, 2010, the foster parents filed a motion to intervene. The foster parents also filed an objection to the transfer of guardianship to the maternal great aunt along with a motion to transfer guardianship to themselves. On May 3, 2010, the court, *Elgo, J.,* denied the foster parents' motion to intervene[1] and granted the motion to transfer guardianship of Joshua S. to his maternal great aunt, with an order of protective supervision. No appeal was filed or other avenue of review sought at that time.

On July 29, 2010, the foster parents filed a second motion to intervene, along with a motion to open the May 3, 2010 judgment and to modify the disposition to transfer guardianship to themselves. The basis of the second motion to intervene was this court's decision in *In re Yarisha F.,* 121 Conn. App. 150, 994 A.2d 296 (2010), in which this court held that the trial court erred when it transferred guardianship of the minor child to her great-grandmother in Florida without a supporting interstate compact study report from a suitable authority in that state as required by General Statutes § 17a-175.[2] Id., 155–56. The foster parents claimed that because Joshua S. was transferred to Florida in apparent violation of *In re Yarisha F.,* they should be allowed

---

[1] Because the court denied the foster parents' motion to intervene, it did not consider their other motions.

[2] General Statutes § 17a-175, article III (d), which governs the placement of minor children in a home in another state, provides in relevant part: "The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child."

to intervene and that the May 3, 2010 judgment should be opened. On August 3, 2010, counsel for Joshua S. filed an objection to the foster parents' motion to intervene and also filed a motion to end the order of protective supervision. Also on August 3, 2010, the court, *Elgo, J.*, denied the foster parents' second motion to intervene and granted the motion to end protective supervision. This appeal followed.

On appeal, the foster parents claim that the court (1) abused its discretion in denying their motion to intervene in their capacity as foster parents and (2) erred by not conducting a hearing to determine whether exceptional circumstances existed such that they appropriately could act as the child's next friends. The foster parents argue that they should have been allowed to intervene to advance their claim that Joshua S. was transferred to his great aunt in Florida in contravention of § 17a-175. We conclude that the foster parents do not have the party status necessary to invoke our appellate jurisdiction, and, thus, we dismiss their appeal.

"A threshold inquiry of this court upon every appeal presented to it is the question of appellate jurisdiction. . . . It is well established that the subject matter jurisdiction of the Appellate Court . . . is governed by [General Statutes] § 52-263 . . . ." (Citation omitted; internal quotation marks omitted.) *King* v. *Sultar*, 253 Conn. 429, 434, 754 A.2d 782 (2000). Section 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either *party* is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting

a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9." (Emphasis added.) Thus, "[o]n its face, [§ 52-263] explicitly sets out three criteria that must be met in order to establish subject matter jurisdiction for appellate review: (1) the appellant *must be a party*; (2) the appellant must be aggrieved by the trial court's decision; and (3) the appeal must be taken from a final judgment." (Emphasis added.) *State* v. *Salmon*, 250 Conn. 147, 153, 735 A.2d 333 (1999).

In the present case, both of the foster parents' motions to intervene were denied; thus, they were never parties to the action. Our Supreme Court has stated, however, that "if a would-be intervenor has a colorable claim to intervention as a matter of right . . . both the final judgment and party status prongs of our test for appellate jurisdiction are satisfied." (Citation omitted; internal quotation marks omitted.) *King* v. *Sultar*, supra, 253 Conn. 436. "A colorable claim is one that is superficially well founded but that may ultimately be deemed invalid . . . ." (Internal quotation marks omitted.) *BNY Western Trust* v. *Roman*, 295 Conn. 194, 209, 990 A.2d 853 (2010). We conclude that the foster parents, on the facts of this case, do not have a colorable claim to intervention as a matter of right.

"In order for a proposed intervenor to establish that it is entitled to intervene as a matter of right, the proposed intervenor must satisfy a well established four element conjunctive test: [T]he motion to intervene must be timely, the movant must have a direct and substantial interest in the subject matter of the litigation, the movant's interest must be impaired by disposition of the litigation without the movant's involvement and the movant's interest must not be represented adequately by any party to the litigation. . . . Failure to meet any

one of the four elements, however, will preclude intervention as of right." (Citations omitted; internal quotation marks omitted.) Id., 205–206. The foster parents fail to satisfy this test because they lack a sufficient direct and substantial interest in the subject matter of the action.[3]

Our Supreme Court has stated that "a person or entity does not have a sufficient interest to qualify for the right to intervene merely because an impending judgment will have some effect on him, her, or it. The judgment to be rendered must affect the proposed intervenor's direct or personal rights, not those of another." *Horton* v. *Meskill*, 187 Conn. 187, 195, 445 A.2d 579 (1982). Here, the purpose of the proceedings into which the foster parents sought to intervene was to determine the guardianship of Joshua S. after a finding of neglect. Thus, the judgment affected the rights of Joshua S., and perhaps his parents, not the rights of the foster parents. Although the court's determination regarding the guardianship of Joshua S. likely affected the foster parents emotionally, it did not affect any direct or personal rights held by them as a matter of law.

It is well established that "[f]oster families do not have the same rights as biological families or adoptive families." (Internal quotation marks omitted.) *Hunte* v. *Blumenthal*, 238 Conn. 146, 164, 680 A.2d 1231 (1996). It is unquestioned that "[b]iological and adoptive families have a liberty interest in the integrity of their family unit which is part of the fourteenth amendment's right to familial privacy." *Nye* v. *Marcus*, 198 Conn. 138, 144, 502 A.2d 869 (1985), superseded by statute on other grounds as stated in *Terese B.* v. *Commissioner of Children & Families*, 68 Conn. App. 223, 230 n.10, 789 A.2d 1114 (2002). Foster parents, on the other hand, "do not

---

[3] We do not doubt that the foster parents have developed a bond with Joshua S. and that separation is painful. We by no means disparage the salutary role of foster parents in general and, presumably, the role of the foster parents in this case. We are bound, however, by the law.

enjoy a liberty interest in the integrity of their family unit." (Internal quotation marks omitted.) *Hunte* v. *Blumenthal*, supra, 164. Rather, "[t]he rights of foster parents are defined and restricted by statute . . . [and] the expectations and entitlements of foster families can be limited by the state." (Internal quotation marks omitted.) Id. For example, General Statutes § 52-466 (f) confers standing on foster parents to "make application for a writ of habeas corpus regarding the custody of a child currently or recently in his care . . . ." Additionally, foster parents have a right under General Statutes § 46b-129 (o)[4] to receive notice and be heard in any proceeding concerning their foster child. Although this statute explicitly gives foster parents a right "to be heard"[5] during a proceeding regarding the foster child, neither this statute, nor any other statute, confers on foster parents a right to intervene in a proceeding related to their foster child. The statutory scheme provides to foster parents a limited and narrow set of rights regarding foster children. Such a limited and narrow set of rights is consistent with the premise that "[f]oster parents are entrusted with foster children on a temporary basis only." *Hunte* v. *Blumenthal*, supra, 164. Accordingly, we conclude that the foster parents do not have a colorable claim to intervention as a matter of right, and, thus, they are not "parties" entitled to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

---

[4] General Statutes § 46b-129 (o) provides: "A foster parent, prospective adoptive parent or relative caregiver shall receive notice and have the right to be heard for the purposes of this section in Superior Court in any proceeding concerning a foster child living with such foster parent, prospective adoptive parent or relative caregiver. A foster parent, prospective adoptive parent or relative caregiver who has cared for a child or youth shall have the right to be heard and comment on the best interests of such child or youth in any proceeding under this section which is brought not more than one year after the last day the foster parent, prospective adoptive parent or relative caregiver provided such care."

[5] The foster parents indeed were given an opportunity to be heard before the court at the May 3, 2010 hearing.