******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## IN RE SANTIAGO G.*
### (SC 19798)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued December 7, 2016—officially released April 4, 2017***

*Hugh D. Hughes*, with whom, on the brief, was *Glenn Formica*, for the appellant (proposed intervenor Maria G.).

*Benjamin Zivyon*, assistant attorney general, with whom, on the brief, were *Michael Besso*, assistant attor-

ney general, and *George Jepsen*, attorney general, for the appellee (petitioner).

*Joshua Michtom*, assistant public defender, for the minor child.

*Opinion*

ROBINSON, J. The dispositive issue in this appeal is whether the denial of a third party's motion to intervene in a proceeding brought to terminate the parental rights of a minor child's biological mother is an appealable final judgment. The proposed intervenor, Maria G., appeals from the judgment of the trial court, *Hon. Barbara M. Quinn*, judge trial referee,[1] denying her motion to intervene as of right and permissively.[2] On appeal, Maria G. claims that her guardianship interests over the minor child, Santiago G., will effectively be extinguished if the court terminates the parental rights of the respondent Melissa E.,[3] who is Santiago's biological mother. As such, she claims to have a right to intervene or, in the alternative, that she should be granted permissive intervention. We disagree, and conclude that Maria G. does not have a colorable claim of intervention as of right and, as such, is not appealing from a final judgment. Accordingly, we dismiss this appeal for lack of subject matter jurisdiction.

The record and our decision in a related matter reveal the following relevant facts and procedural history. "Santiago was born in Guatemala . . . on April 18, 2009. He was cared for since his birth, however, by Maria G., an Argentinian citizen and legal permanent resident of the United States who resided in Stamford, and, for some of that time, by Henry L., Maria G.'s husband."[4] *In re Santiago G.*, 318 Conn. 449, 453, 121 A.3d 708 (2015).

Santiago was in Maria G.'s care from birth until October 16, 2012, when the petitioner, the Commissioner of Children and Families (commissioner), filed a motion for an order of temporary custody of Santiago on the basis of neglect after having "received a report from the federal Department of Homeland Security (Homeland Security) stating that Maria G. and Henry L. possibly had purchased Santiago in Guatemala and smuggled him into the United States on June 14, 2009." (Footnote omitted.) Id. During the investigation, Maria G. told a social worker from the Department of Children and Families (department) and an investigator from Homeland Security that her former housekeeper's mother had introduced her to Melissa E., a pregnant teenage orphan at the time, who was interested in giving her baby away. Id., 453–54. Maria G. then told the investigators that she and Henry L. paid an unnamed physician at a clinic in Guatemala to deliver the baby. Id., 454. They then had a midwife falsely state that Maria G. was the biological mother in order to obtain a birth certificate naming Maria G. and Henry L. as Santiago's parents, and paid another party $6000 for a falsified United States passport for Santiago to allow his entry into the United States. Id. On the basis of this information, the department invoked a ninety-six hour hold over Santiago, during which he was placed in a foster

home. Id. "On November 15, 2012, the trial court, *Heller, J.*, adjudicated Santiago neglected, on the basis of abandonment by his biological parents, who [at that time] remained unknown, and ordered him committed to the commissioner's custody. After removing Santiago to a temporary foster home in November, 2012, the department placed him in a legal risk preadoptive foster home in December, 2012, where he remains today." Id., 457.

On December 20, 2013, the commissioner filed a motion to open the judgment of neglect, requesting that the judgment be set aside because it was based on the mutual mistake of the parties that Santiago's biological parents were unknown and that Santiago had been a victim of human trafficking. Id., 460. A trial on the motion to open commenced, during which the trial court learned that Maria G. had pleaded guilty to a federal felony in connection with her act of using forged documents to bring Santiago into the United States, and that she soon would be deported to Argentina as part of her sentence. Id., 460–61.

On April 22, 2014, the trial court, *Mottolese, J.*, denied the motion to open the judgment and Melissa E.'s motion to revoke Santiago's commitment, both of which this court affirmed. Id., 463, 475. On October 7, 2015, the department filed a petition to terminate Melissa E.'s parental rights. Maria G. filed an amended motion to intervene as of right and permissively. On June 15, 2016, the trial court denied Maria G.'s motion to intervene. This appeal followed. See footnote 2 of this opinion

Separate from the proceeding underlying the present appeal, Maria G. filed a petition for a writ of habeas corpus seeking custody of Santiago. In the course of these habeas proceedings, Maria G. produced a June, 2015 Guatemalan court order that recognizes her right to custody of Santiago. The habeas court, *Colin, J.*, determined that the June, 2015 order was sufficient to establish prima facie evidence of Maria G.'s standing to pursue the habeas petition. On January 26, 2017, the habeas court, *Hon. Barbara M. Quinn*, issued a memorandum of decision resolving the parties' cross motions for summary judgment in the habeas action, in which it concluded that Maria G. could not establish that she is the parent or legal guardian of Santiago. Accordingly, the habeas court granted the commissioner's motion for summary judgment and denied the habeas petition.

In the present appeal, Maria G. claims that the trial court improperly denied her motion to intervene in the termination of parental rights proceeding both as of right and permissively. Specifically, Maria G. asserts that she may intervene as a matter of right pursuant to the four factor test set forth in *BNY Western Trust* v. *Roman*, 295 Conn. 194, 205, 990 A.2d 853 (2010), because: (1) she has a direct and substantial interest in the termination of parental rights proceeding on the

basis of the habeas court's decision in February, 2016, which recognized her prima facie interest in custody of Santiago; (2) her rights are not adequately represented by any party to the termination of parental rights proceeding; and (3) her interest could be impaired by the disposition because the termination of Melissa E.'s rights would effectively terminate Maria G.'s rights without due process, as the department could then move forward with the adoption proceedings for Santiago.[5] Maria G. further claims that the trial court abused its discretion in denying her motion for permissive intervention because the five factors governing such motions weigh in her favor.[6] See, e.g., *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 461, 904 A.2d 137 (2006). Finally, Maria G. contends that the trial court erred in failing to consider in its decision federal law regarding the Act of State Doctrine, international comity of laws, and the Hague Convention.[7]

In response, the commissioner contends that the trial court properly denied Maria G.'s motion to intervene, as she did not have a direct and substantial interest in the termination of parental rights proceedings against Melissa E. The commissioner also claims that this court does not have subject matter jurisdiction to decide this appeal, on its merits, because Maria G. has not appealed from a final judgment. Specifically, the commissioner contends that this interlocutory appeal must be dismissed because Maria G. does not have a colorable claim of right to intervene because she has no direct and substantial interest in the termination proceeding, which only concerns Melissa E.'s parental rights. Finally, the commissioner claims that the court did not abuse its discretion in denying Maria G.'s motion to intervene permissively, because her actions in evading established adoption laws undermine her claim that this court should permissively grant her motion.[8] We agree with the commissioner, and conclude that Maria G.'s appeal must be dismissed for lack of a final judgment.

We first address the department's jurisdictional claim. "Unless a specific right to appeal otherwise has been provided by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Internal quotation marks omitted.) *Palmer* v. *Friendly Ice Cream Corp.*, 285 Conn. 462, 466–67, 940 A.2d 742 (2008). "We begin by setting forth the standard of review. The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law [over which we exercise plenary review]." (Internal quotation marks omitted.) Id., 466. Specifically, with regard to motions to intervene, "an unsuccessful applicant for intervention in the trial court does not have a final judgment from which to appeal unless [she] can make

a colorable claim to intervention as a matter of right. If [she] does make such a colorable claim, on appeal the court has jurisdiction to adjudicate both [her] claim to intervention as a matter of right and to permissive intervention." (Internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 449 n.3. "When prospective intervenors have not made a colorable claim to intervene as a matter of right, there is no right to interlocutory review of the order denying their motion to intervene." *Palmer* v. *Friendly Ice Cream Corp.*, supra, 479–80.

A review of our case law is necessary to clarify the two part framework by which we consider interlocutory appeals from a trial court's decision to deny a motion to intervene.[9] The first part of the inquiry focuses on whether the court's judgment as to the motion to intervene was a final judgment for purposes of appeal. "The right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . The statutory right to appeal is limited to appeals by aggrieved parties from final judgments. . . . Because our jurisdiction over appeals, both criminal and civil, is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Citations omitted.) *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983); see also General Statutes §§ 52-263 and 51-197a. "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 31. "Unless an order can satisfy one of these two prongs, the lack of a final judgment is a jurisdictional defect that [necessitates] . . . dismissal of the appeal." (Internal quotation marks omitted.) *BNY Western Trust* v. *Roman*, supra, 295 Conn. 202. For purposes of the appeal from a court's interlocutory ruling on a motion to intervene, only the second prong of the *Curcio* test is implicated. See *Palmer* v. *Friendly Ice Cream Corp.*, supra, 285 Conn. 478 n.13.

The first time we considered whether an interlocutory appeal may be taken from the denial of a motion to intervene was in *Jones* v. *Ricker*, 172 Conn. 572, 575 n.3, 375 A.2d 1034 (1977). In that case, this court suggested that the appealability of a trial court's decision in a motion to intervene depended on "whether a person had an absolute right to intervene or whether intervention was a matter within the trial court's discretion." Id. Three years later, relying on *Jones*, this court determined in *Ricard* v. *Stanadyne, Inc.*, 181 Conn. 321, 322 n.1, 435 A.2d 352 (1980), that, "[b]ecause [the intervenor] at the very least had a colorable claim to intervention as a matter of right, the denial of its motion

to intervene was appealable." In *Ricard*, this court concluded that the intervenor had a colorable claim to intervention as a matter of right, but concluded that the trial court's denial of the intervenor's motion was proper, because the intervenor's motion was untimely. Id., 322–24. Then, in *Horton* v. *Meskill*, 187 Conn. 187, 188–89, 445 A.2d 579 (1982), this court did *not* address the issue of appealability, but rather, concluded that the proposed intervenors did not have a right to intervene and that the trial court did not abuse its discretion in denying their motion to intervene permissively.

Relying on our Appellate Court's interpretation of these cases; see *Common Condominium Assns., Inc.* v. *Common Associates*, 5 Conn. App. 288, 290–91, 497 A.2d 780 (1985); we subsequently determined in *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 449 n.3, that "an unsuccessful applicant for intervention in the trial court does not have a final judgment from which to appeal unless [she] can make a colorable claim to intervention as a matter of right. If [she] does make such a colorable claim, on appeal the court has jurisdiction to adjudicate both [her] claim to intervention as a matter of right and to permissive intervention." (Internal quotation marks omitted.) Accordingly, the dispositive inquiry into whether the denial of a motion to intervene is an appealable, final judgment is whether the intervenor can make a colorable claim to intervention as a matter of right. "A colorable claim is one that is superficially well founded but that may ultimately be deemed invalid . . . ." (Internal quotation marks omitted.) *BNY Western Trust* v. *Roman*, supra, 295 Conn. 209. "For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he *might* prevail." (Emphasis in original; internal quotation marks omitted.) *State* v. *Crawford*, 257 Conn. 769, 776, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002).

It is only after we have addressed the jurisdictional threshold inquiry of whether the intervenor has a colorable claim of right to intervention that we turn to the second part of the inquiry of whether the trial court's judgment as to the motion to intervene was proper, namely, the merits of the intervenor's claim to intervene as of right or permissively. "In order for a proposed intervenor to establish that it is entitled to intervene as a matter of right, the proposed intervenor must satisfy a well established four element conjunctive test: [t]he motion to intervene must be timely, the movant must have a direct and substantial interest in the subject matter of the litigation, the movant's interest must be impaired by disposition of the litigation without the movant's involvement and the movant's interest must not be represented adequately by any party to the litigation." (Internal quotation marks omitted.) *BNY Western Trust* v. *Roman*, supra, 295 Conn. 205. "For purposes

of judging the satisfaction of [the] conditions [for intervention] we look to the pleadings, that is, to the motion for leave to intervene and to the proposed complaint or defense in intervention, and . . . we accept the allegations in those pleadings as true. The question on a petition to intervene is whether a well-pleaded defense or claim is asserted. Its merits are not to be determined. The defense or claim is assumed to be true on motion to intervene, at least in the absence of sham, frivolity, and other similar objections. . . . Thus, neither testimony nor other evidence is required to justify intervention, and [a] proposed intervenor must allege sufficient facts, through the submitted motion and pleadings, if any, in order to make a showing of his or her right to intervene. The inquiry is whether the claims contained in the motion, if true, establish that the proposed intervenor has a direct and immediate interest that will be affected by the judgment." (Citation omitted; internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 457.

Accordingly, on appeal, two separate inquiries must be made. First, the court must determine whether the trial court's decision on the motion to intervene is a final judgment for jurisdictional purposes; if it is not, then the appeal must be dismissed. *BNY Western Trust* v. *Roman*, supra, 295 Conn. 202. If the court determines that the trial court's decision is a final judgment, then it properly has subject matter jurisdiction to analyze and render a decision as to the parties' claims of intervention as of right and permissive intervention. Put another way, the four factors of the intervention as of right test are viewed in a "slightly different lens" when determining the jurisdictional issue of whether the proposed intervenor has made a colorable claim to intervene as of right. Id., 209. Consistent with the well established "rule that every presumption is to be indulged in favor of jurisdiction," and "the judicial policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court"; (internal quotation marks omitted) *In re Jose B.*, 303 Conn. 569, 579, 34 A.3d 975 (2012); concepts which extend to appellate jurisdiction; see *In re Judicial Inquiry No. 2005-02*, 293 Conn. 247, 253–54, 977 A.2d 166 (2009); our examination of whether a colorable claim exists focuses on the plausibility of the appellant's challenge to the denial of the motion to intervene when the pleadings and motion are viewed in light of the relevant legal principles. Cf. *State* v. *Crawford*, supra, 257 Conn. 776 ("[f]or a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he *might* prevail" [emphasis in original; internal quotation marks omitted]).

We now turn to the threshold jurisdictional inquiry in the present appeal, namely, whether Maria G. has made a colorable claim to intervene as of right in the

termination of parental rights proceeding against Melissa E. In light of on point, unchallenged case law from both this court and the Appellate Court squarely barring Maria G.'s claim, we conclude that she has not.

This court "has stated that a person or entity does not have a sufficient interest to qualify for the right to intervene merely because an impending judgment will have some effect on him, her, or it. The judgment to be rendered must affect the proposed intervenor's direct or personal rights, not those of another." (Internal quotation marks omitted.) *In re Joshua S.*, 127 Conn. App. 723, 729, 14 A.3d 1076 (2011), quoting *Horton* v. *Meskill*, supra, 187 Conn. 195. Additionally, "our cases have established that parties interested in the prospective adoption have no right to intervene in the termination proceeding. It is . . . essential, in considering a petition to terminate parental rights, to sever completely the issues of whether termination is statutorily warranted and whether a proposed adoption is desirable." (Internal quotation marks omitted.) *In re Baby Girl B.*, 224 Conn. 263, 275, 618 A.2d 1 (1992). Further, termination of parental rights proceedings concern *only* the rights of the respondent parent. See, e.g., General Statutes § 17a-112 (n); see also *In re Denzel A.*, 53 Conn. App. 827, 835, 733 A.2d 298 (1999) ("[t]he purpose of the intervention . . . in a termination of parental rights case does not include the right to effect an adoption or to obtain custody . . . but is solely for the purpose of affecting the termination itself").

On the facts of the present case, Maria G. has no colorable claim of right to intervention in the termination of parental rights proceeding against Melissa E., because in the face of well established case law holding that there is no right to intervene in the adjudicatory phase of a termination of parental rights action; see *In re Vincent D.*, 65 Conn. App. 658, 665, 783 A.2d 534 (2001); she simply has no claim of a direct and substantial interest in that proceeding that is even "superficially well founded . . . ." (Internal quotation marks omitted.) *BNY Western Trust* v. *Roman*, supra, 295 Conn. 209. Although Maria G. filed her amended motion to intervene to "allow her to argue and explain to the court the reason that she is the holder of legal rights as the parent of Santiago," intervening in the termination of parental rights action against Melissa E. is not the proper forum for her to advance these interests. Additionally, the termination of Melissa E.'s parental rights will not cause Maria G. irreparable harm or abrogate a right that she currently holds because, even assuming that Maria G. does have some guardianship interest over Santiago, the present termination proceeding would in no way affect that interest. See *BNY Western Trust* v. *Roman*, supra, 203.

The dismissal of this appeal for lack of a final judgment is further supported by the fact that the result of

the termination of parental rights proceeding against Melissa E. did not affect the outcome of Maria G.'s action in the habeas court for custody or guardianship of Santiago. This is because the only rights at issue in the termination of parental rights action underlying the present appeal are the parental rights of Melissa E., not those of Maria G.[10] Put differently, Maria G.'s potential adoption rights to Santiago are not impacted by the termination proceeding underlying the present appeal, but rather, were addressed during her action in the habeas court.

Lastly, the Guatemalan judgment upon which Maria G. relies[11] does not affect the disposition of this case. Even if we were to assume, without deciding, that the Guatemalan judgment did give some sort of guardianship interest of Santiago to Maria G., the proceeding that underlies the present appeal is the termination of Melissa E.'s parental rights, the disposition of which, as previously noted in this opinion, in no way affected Maria G.'s ability to pursue her guardianship rights or interests in the habeas court.[12] Stated another way, the present case represents a situation akin to the commissioner seeking the termination of parental rights of just one of two biological parents—the termination of one parent's rights has no impact on the other parent's rights. See, e.g., General Statutes § 45a-717 (j) ("if the parental rights of only one parent are terminated, the remaining parent shall be sole parent and, unless otherwise provided by law, guardian of the person").

Thus, we conclude that Maria G. has failed to plead a colorable claim to intervene as of right. Accordingly, we conclude that the trial court's denial of her motion to intervene as of right is not a final judgment for purposes of this appeal.

The appeal is dismissed.

In this opinion the other justices concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** April 4, 2017, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] We note that numerous trial judges participated in the proceedings underlying this appeal. For the sake of simplicity, all references to the trial court in this opinion are to Judge Quinn unless otherwise noted.

[2] Maria G. appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] We note that Melissa E. has been referred to in previously published appellate opinions as Melissa M. See, e.g., *In re Santiago G.*, 318 Conn. 449, 452, 121 A.3d 708 (2015); *In re Santiago G.*, 154 Conn. App. 835, 838 and n.1, 108 A.3d 1184 (2015). For the sake of consistency with the trial court's memorandum of decision in the present case, however, we refer to her in this opinion as Melissa E.

[4] "Maria G. testified that she and Henry L. separated in February, 2012. Henry L. ceased visiting Santiago in March, 2012, and did not seek any further contact with the child." *In re Santiago G.*, 318 Conn. 449, 453 n.1, 121 A.3d 708 (2015).

[5] The first factor of the test, namely, that the motion be timely, is not in

dispute. See *BNY Western Trust* v. *Roman*, supra, 295 Conn. 205.

[6] "A trial court exercising its discretion in determining whether to grant a motion for permissive intervention balances several factors [including]: the timeliness of the intervention, the proposed intervenor's interest in the controversy, the adequacy of representation of such interests by other parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in resolving the controversy [before the court]." (Internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 461, 904 A.2d 137 (2006).

[7] Although we do not reach the underlying merits of Maria G.'s claims in this appeal because of our jurisdictional conclusion, we note that the habeas court rejected them in its memorandum of decision dated January 26, 2017.

[8] Counsel for the minor child has made five additional arguments. First, counsel for the minor child claims that Maria G. never pleaded intervention as of right to the trial court and, as such, this court should disregard any such argument in the present appeal. Second, counsel for the minor child contends that Maria G.'s claims fail on the merits because she does not have a direct and substantial interest in the termination of parental rights proceeding. Third, counsel for the minor child also claims that Maria G.'s motion to intervene permissively is barred by res judicata because the issue of whether she should be permitted to intervene as an interested party was fully litigated in both 2012 and 2015. Fourth, counsel for the minor child contends that the reasoning supporting the denial of Maria G.'s prior motions to intervene remain applicable. Fifth, counsel for the minor child contends that the trial court did not improperly decline to consider federal law regarding the Act of State Doctrine, international comity of laws, and the Hague Convention, in its denial of Maria G.'s motion. Because of our jurisdictional conclusion, we need not consider these additional arguments.

[9] We note the lack of consistency in our state's appellate case law as to the analysis of interlocutory appeals from denials of motions to intervene. Compare *Palmer* v. *Friendly Ice Cream Corp.*, supra, 285 Conn. 477–78 (analyzing, based on principles discussed previously, when plaintiffs have not made colorable claim), *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 449 n.3 (raising, sua sponte, issue of subject matter jurisdiction, and concluding that appellant made colorable claim to intervention as matter of right without any analysis as to that point), and *In re Joshua S.*, 127 Conn. App. 723, 728–29, 14 A.3d 1076 (2011) (determining that appellants did not have colorable claim to intervention after applying four factor test for determining whether party is entitled to intervene as matter of right). Put another way, sometimes this court has addressed the question of whether a colorable claim exists separately from the four factor intervention as of right test, and other times it has not. Accordingly, we take this opportunity to clarify the proper approach.

[10] To this end, this court expressed concerns at oral argument about whether the department would proceed immediately with adoption proceedings upon termination of Melissa E.'s parental rights, because to do so would effectively extinguish any potential rights of Maria G. At oral argument, Assistant Attorney General Benjamin Zivyon, counsel for the commissioner, assured this court that the department would not proceed with the adoption of Santiago until after the final disposition of Maria G.'s habeas proceeding. Zivyon represented to this court that Judge Quinn had not yet scheduled a trial for the termination of parental rights of Melissa E., and would not do so until after Maria G.'s habeas action was resolved, a proceeding over which Judge Quinn also presided. Moreover, we note that prior to any adoption proceeding, an affidavit must be filed stating that there is no proceeding pending in any other court affecting the custody of the child free for adoption. See General Statutes § 52-231a.

Additionally, we note that Maria G. had an opportunity to litigate the merits of her claims to guardianship in the proper venue, namely, the habeas court. After the filing of cross motions for summary judgment, the habeas court ultimately dismissed Maria G.'s habeas petition.

[11] In Guatemala, Melissa E. filed a voluntary petition for confirmation with the Family Trial Court, San Benito, Peten, on June 17, 2015. In this petition, she granted custody to Maria G., "since [Maria G.] is the woman who has cared for the minor child since his birth, as if he were her son, and has provided his sustenance and education." On June 18, 2015, the Judge of the Family Trial Court, Department of Peten, Guatemala, entered judgment, granting Maria G. parental rights, custody, and representation of Santiago. We note several important facts regarding this foreign judgment. First, this

judgment was not sought until 2015, several years after the department removed Santiago from the custody of Maria G. Second, the Guatemalan judgment was rendered without notice to the department, Santiago's counsel, or the guardian ad litem for him, which is required by law. Third, and finally, when rendering its judgment, the Guatemalan court relied on Santiago's birth certificate, an admittedly illegally forged document, for which Maria G. pleaded guilty to a federal felony and soon will be deported.

[12] This is further evidenced by the habeas court's complete adjudication of Maria G.'s interests, despite the fact that the termination of parental rights action against Melissa E. remains pending.

---