******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# IN RE BRIAN P.*
## (AC 43119)

DiPentima, C. J., and Alvord and Moll, Js.

*Syllabus*

The paternal grandmother, S, of the minor child, B, appealed to this court from the judgment of the trial court denying her motion to intervene, which was filed after the court granted the petition of the Commissioner of Children and Families to terminate the parental rights of the respondents, the mother and father of B. On appeal, S claimed that the court improperly denied her motion to intervene. *Held* that this court lacked subject matter jurisdiction and, accordingly, dismissed the appeal: S neither initiated the action nor was the action brought against her, and the trial court denied her motion to intervene, thus, S was never a party to the action, and lacked standing to appeal; moreover, S did not have a colorable claim to intervention as a matter of right pursuant to the applicable statute (§ 52-263), because S filed her motion to intervene more than two years after the commissioner filed the neglect petition, approximately two years after B was committed to the custody of the commissioner, more than one year after the commissioner filed a termination of parental rights petition, and nearly one month after the judgment was rendered terminating the respondents' parental rights; S was aware of the proceedings and waited to attempt to intervene until after the termination judgment was rendered, and, S's claim that she could not prevail on a motion for permanent guardianship pursuant to the applicable statute (§ 46b-129 (j) (6)) until after the court found that a statutory ground for termination existed was unavailing, as this claim misinterpreted the plain language of §46b-129 (j) (6), which sets forth findings that a court must make prior to issuing an order for permanent legal guardianship and does not address the issue of the timeliness of a motion to intervene and, furthermore, permanent guardianship is intended to occur without the termination of parental rights; S's untimeliness was evident by the fact that the court had already appointed the commissioner as the statutory parent for purposes of securing adoption, thus, the opportunity had passed for S to present evidence concerning the viability of granting her permanent guardianship of B in lieu of terminating parental rights and, by her delay, S lost any colorable claim to intervene.

Argued December 10, 2019—officially released February 6, 2020**

### Procedural History

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of New London, Juvenile Matters at Waterford, and tried to the court, *Driscoll, J.*; judgment terminating the respondents' parental rights; thereafter, the court denied the paternal grandmother's motion to intervene, and the paternal grandmother appealed to this court. *Affirmed.*

*Benjamin M. Wattenmaker*, for the appellant (paternal grandmother).

*Sara Nadim*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*James W. Auwood*, for the minor child.

*Opinion*

DiPENTIMA, C. J. The paternal grandmother of the minor child and proposed intervenor, Susan P., appeals from the denial of her motion to intervene, which was filed following the judgment of the trial court granting the petition of the Commissioner of Children and Families (commissioner) to terminate the parental rights of Brian P. (father) and Jennifer L. (mother) with respect to the minor child, Brian P.[1] We conclude that we lack subject matter jurisdiction and, accordingly, dismiss the appeal.

The relevant facts are those that follow. Brian P. was born in February, 2016, and his meconium tested positive for opiates. Both parents had a history of opiate addiction, although initially only the mother admitted her addiction to the Department of Children and Families (department). The department became involved and entered into a voluntary agreement with Susan P. wherein Brian P. was placed under the parents' custody at Susan P.'s home, with the further agreement that the mother would have no unsupervised contact with Brian P. The mother was to engage in substance abuse treatment, and no treatment was recommended for the father because, according to the parents, he had no substance abuse issues.

On January 18, 2017, the commissioner filed a neglect petition. On April 25, 2017, the parents pleaded nolo contendere to the neglect allegations, the court accepted the pleas, and Brian P. was adjudicated neglected. The court ordered that Brian P. remain in the parents' custody at the parents' place of abode with six months of protective supervision. At that time, the parents' place of abode was at Susan P.'s house. On June 9, 2017, in response to an oral motion made by the commissioner, the court, *Hon. Michael A. Mack*, judge trial referee, modified the disposition and committed Brian P. to the care and custody of the commissioner.[2] On June 14, 2017, the father admitted to the department that he had been addicted to opiates for the past three years. On May 22, 2018, the commissioner filed a petition for termination of parental rights.

On May 3, 2019, the court, *Driscoll, J.*, granted the petition for termination of parental rights.[3] The court found that no family member was available as a placement resource and that Brian P. had been placed in a foster home of a nonrelative.[4] The court first made its adjudicatory decision that a statutory basis for termination of parental rights existed pursuant to General Statutes § 17a-112 (j) because both parents had failed to achieve rehabilitation to such a degree as to be able to assume a responsible position in Brian P.'s life. The court concluded in the dispositional phase, after examining the seven factors in § 17a-112 (k), that termination of parental rights was in Brian P.'s best interests. The

court granted the commissioner's petition to terminate the parental rights of Brian P.'s biological parents and appointed the commissioner as the statutory parent for the purpose of securing Brian P.'s adoption.

On May 31, 2019, approximately one month after the termination judgment, Susan P. filed a "motion to reopen judgment, intervene and request permanent transfer of guardianship of the minor." She filed an amended motion on June 3, 2019. The amended motion sought intervention as a matter of right and permissive intervention. In her amended motion, Susan P. alleged that she had a preexisting relationship with Brian P. and was actively involved in his care. She alleged that in September, 2016, Brian P. moved into her home and she cared for him until June, 2017. She claimed that the department informed her repeatedly that, "pending the parents' compliance," Brian P. would be returned to the care of his parents or family. She further alleged that the department did not discuss the case with her for confidentiality reasons and did not raise the fact that the parents resided at her home as an issue against her being a possible placement resource. On June 11, 2019, oral argument was held regarding Susan P.'s motion to intervene. The court, after considering several factors, denied Susan P.'s motion to intervene and stated that the motion was "very untimely filed and [Brian P. is] entitled to a determination as to his permanency." This appeal followed.

On appeal, Susan P. claims that the court improperly denied her motion to intervene. The commissioner contends that because Susan P. is not a party to the underlying action and because she does not have a colorable claim to intervene as a matter of right, the statute governing our jurisdiction, General Statutes § 52-263, deprives us of jurisdiction to hear this appeal. We first address this threshold issue and conclude that Susan P. does not have the party status necessary to invoke our appellate jurisdiction. "A threshold inquiry of this court upon every appeal presented to it is the question of appellate jurisdiction. . . . It is well established that the subject matter jurisdiction of the Appellate Court . . . is governed by . . . § 52-263 . . . . Section 52-263 provides: 'Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in [General Statutes §§] 8-8 and 8-9.' . . . Thus, [o]n its face, [§ 52-263] explicitly sets out three

criteria that must be met in order to establish subject matter jurisdiction for appellate review: (1) the appellant must be a party; (2) the appellant must be aggrieved by the trial court's decision; and (3) the appeal must be taken from a final judgment." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *In re Joshua S.*, 127 Conn. App. 723, 727–28, 14 A.3d 1076 (2011).

To determine whether we have subject matter jurisdiction over this appeal, we examine the question raised by the commissioner of whether Susan P. has party status.[5] Only a party to an underlying action is entitled to review by way of an appeal pursuant to § 52-263. *State* v. *Salmon*, 250 Conn. 147, 154, 735 A.2d 333 (1999). "Ordinarily, the word party has a technical legal meaning, referring to those by or against whom a legal suit is brought . . . the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons. . . . This definition of party, which we also have labeled party status in court . . . includes only those who are parties to the underlying action." (Citations omitted; internal quotation marks omitted.) Id.

In the present case, Susan P. did not initiate the action nor was the action brought against her; her motion to intervene was denied. Thus, she was never a party to the action. In order to determine, however, whether Susan P. has satisfied the party status requirement of § 52-263, we look to whether she has a colorable claim to intervene as a matter of right.[6] "[I]f a would-be intervenor has a colorable claim to intervention as a matter of right . . . both the final judgment and party status prongs of our test for appellate jurisdiction are satisfied." (Citation omitted; internal quotation marks omitted.) *King* v. *Sultar*, 253 Conn. 429, 436, 754 A.2d 782 (2000). We conclude that Susan P. does not have a colorable claim to intervention as a matter of right and, therefore, lacks standing to appeal.

"A colorable claim is one that is superficially well founded but that may ultimately be deemed invalid . . . . For a claim to be colorable, the [proposed intervenor] need not convince the trial court that [s]he necessarily will prevail; [s]he must demonstrate simply that [s]he might prevail. . . . In order for a proposed intervenor to establish that [she] is entitled to intervene as a matter of right, the proposed intervenor must satisfy a well established four element conjunctive test: [t]he motion to intervene must be timely, the movant must have a direct and substantial interest in the subject matter of the litigation, the movant's interest must be impaired by disposition of the litigation without the movant's involvement and the movant's interest must not be represented adequately by any party to the litigation. . . .

"[These] four factors of the intervention as of right

test are viewed in a slightly different lens when determining the jurisdictional issue of whether the proposed intervenor has made a colorable claim to intervene as of right. . . . Consistent with the well established rule that every presumption is to be indulged in favor of jurisdiction, and the judicial policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court . . . our examination of whether a colorable claim exists focuses on the plausibility of the appellant's challenge to the denial of the motion to intervene when the pleadings and motion are viewed in light of the relevant legal principles." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *In re Santiago G.*, 325 Conn. 221, 231–33, 157 A.3d 60 (2017). "Failure to meet any one of the four elements, however, will preclude intervention as of right." *BNY Western Trust* v. *Roman*, 295 Conn. 194, 206, 990 A.2d 853 (2010).

We begin by addressing the dispositive issue of timeliness, viewing it through the lens of a colorable claim for intervention as of right. "[T]he necessity for showing that a would-be intervenor made a timely request for intervention involves a determination of how long the intervenor was aware of an interest before he or she tried to intervene, any prejudicial effect of intervention on the existing parties, any prejudicial effect of a denial on the applicant and consideration of any unusual circumstances either for or against timeliness. . . . Factors to consider also include the nature of the interest and the purpose for which the intervenor is seeking to be brought into the action." (Citation omitted; internal quotation marks omitted.) Id., 208–209.

Susan P. filed her motion to intervene on May 31, 2019, more than two years after the commissioner filed its January 18, 2017 neglect petition, approximately two years after Brian P. was committed to the custody of the commissioner on June 9, 2017, and more than one year after the commissioner filed a termination of parental rights petition on May 22, 2018. Most notable, the motion was filed nearly one month after the judgment was rendered terminating the parental rights of the mother and father. Clearly, Susan P. was aware of the proceedings because Brian P. was placed in her home under the parents' custody until the June 9, 2017 commitment. Susan P.'s allegations in her motion to intervene that agents for the department failed to apprise her of the status of the case, inform her that Brian P. would be back with the parents pending compliance, or provide guidance on becoming a placement resource, do not negate the fact that she was aware of the proceedings and chose to wait to attempt to intervene until after the termination judgment was rendered.

In her amended motion, Susan P. sought "to intervene in the above captioned matter and asks the court to grant her permanent transfer of guardianship of the

minor." Susan P. had an opportunity to attempt to intervene and to seek guardianship of Brian P. prior to the court's termination judgment, but did not do so. For instance, she could have timely moved to intervene in the dispositional phase of the neglect proceedings to seek to transfer guardianship to herself. See *In re Anthony A.*, 112 Conn. App. 643, 650–53, 963 A.2d 1057 (2009); see also *In re Shyliesh H.*, 56 Conn. App. 167, 172, 743 A.2d 165 (1999) (trial court granted coterminous petitions for neglect and termination of parental rights and denied paternal grandmother's request for transfer of guardianship). It was only after the conclusion of the termination proceedings that she filed her motion to intervene to seek permanent guardianship.

General Statutes § 46b-129, which concerns neglect proceedings, establishes in subdivision (4) of subsection (d) a right to file a motion to intervene for purposes of seeking permanent guardianship. General Statutes § 46b-129 (d) (4) provides in relevant part: "Any person related to a child or youth may file a motion to intervene for purposes of seeking guardianship of a child or youth more than ninety days after the date of the preliminary hearing. The granting of such motion to intervene shall be solely in the court's discretion, except that such motion shall be granted absent good cause shown whenever the child's or youth's most recent placement has been disrupted or is about to be disrupted. . . ." This statute provides that if the motion to intervene is made more than ninety days after the date of the preliminary hearing, that the intervention is permissive and not as of right unless the child's most recent placement has been disrupted or is about to be disrupted. There is no allegation that the child's placement has been disrupted or is about to be disrupted, and, therefore, this statute does not afford Susan P. the ability to intervene as of right.

Susan P. argues that her motion to intervene was not untimely under the circumstances because she could not prevail on her motion for permanent guardianship pursuant to § 46b-129 (j) (6) until after the court found that a statutory ground for termination existed. This argument misinterprets the plain language of § 46b-129 (j) (6). That section provides in relevant part: "Prior to issuing an order for permanent legal guardianship . . . the court shall find by clear and convincing evidence that the permanent legal guardianship is in the best interests of the child or youth and that the following have been proven by clear and convincing evidence: (A) One of the statutory grounds for termination of parental rights exists . . . or the parents have voluntarily consented to the establishment of the permanent legal guardianship; (B) Adoption of the child or youth is not possible or appropriate . . . (D) The child or youth has resided with the proposed permanent legal guardian for at least a year; and (E) The proposed permanent legal guardian is (i) a suitable and worthy per-

son, and (ii) committed to remaining the permanent legal guardian and assuming the right and responsibilities for the child or youth until the child or youth attains the age of majority." General Statutes § 46b-129 (j) (6).

Section 46b-129 (j) (6) sets forth findings that a court must make prior to issuing an order for permanent legal guardianship and does not address the issue of timeliness of a motion to intervene. Section 46b-129 (j) (6) provides that, under one scenario, the court must find that a statutory ground for termination *exists*, which is not the same as requiring the court to terminate parental rights prior to granting a motion for permanent guardianship. Rather, a permanent guardianship is intended to occur without the termination of parental rights.[7] See General Statutes § 45a-604 (8) (defining permanent guardianship as guardianship "that is intended to endure until the minor reaches the age of majority without termination of the parental rights of the minor's parents . . . ."). Additionally, § 46b-129 (j) (6) provides that, prior to issuing an order for permanent legal guardianship, the court must find that adoption of the child or youth is not possible or appropriate. Adoption and permanent legal guardianship are different permanency plans that, under § 46b-129 (j) (6), cannot coexist. Susan P.'s lack of timeliness is also evident by the fact that the court already has appointed the commissioner as the statutory parent for purposes of securing adoption.

The present case proceeded to its ultimate conclusion and at no point during the proceedings was Susan P.'s motion to intervene before the court. Of the five permanency options provided for in our statutory scheme,[8] the court granted the petition to terminate parental rights and appointed the commissioner as the statutory parent for purposes of securing adoption. By filing her motion to intervene seeking a transfer of permanent guardianship after the final judgment of the court, Susan P. seeks to undo what has already been done. The opportunity has passed for Susan P. to present evidence to the court concerning the viability of granting her permanent guardianship of Brian P. in lieu of terminating parental rights.[9] By her delay, Susan P. lost any colorable claim to a right to intervene. See *BNY Western Trust* v. *Roman*, supra, 295 Conn. 208–209 ("[a]s a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies" [internal quotation marks omitted]); *Horton* v. *Meskill*, 187 Conn. 187, 194, 445 A.2d 579 (1982) ("[t]he right to intervene is lost, not merely weakened, if it is not exercised in a timely fashion"); 67A C.J.S. 658, Parties § 90 (2019) ("[i]ntervention presupposes the pendency of a suit"). Susan P. has not directed us to any compelling circumstances for her decision to wait until she was unsatisfied with the final disposition of the case before moving to intervene. In child protection proceedings, time is of the essence, and permitting intervention after the conclusion of the termination pro-

ceedings would unnecessarily delay permanency. See *In re Juvenile Appeal*, 187 Conn. 431, 439–40, 446 A.2d 808 (1982) (public policy in child protection cases is to protect best interest and welfare of children with notion that time is of essence).

Susan P.'s claim as to the timeliness of her motion is not well founded, and, accordingly, she has failed to make a colorable claim to intervention as of right. As a result, she is not a party to the underlying action and consequently does not have standing to appeal. See, e.g., *M.U.N. Capital, LLC* v. *National Hall Properties, LLC*, 163 Conn. App. 372, 376, 136 A.3d 665 (concluding that former defendant lacked standing to appeal because it was not party to underlying judgment), cert. denied, 321 Conn. 902, 136 A.3d 1272 (2016); *In re Joshua S.*, supra, 127 Conn. App. 730 (concluding that because foster parents did not have colorable claim to intervention as matter of right they were not parties entitled to appeal pursuant to § 52-263). Accordingly, we conclude that, pursuant to § 52-263, we lack subject matter jurisdiction over her appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

\*\* February 6, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Pursuant to Practice Book § 67-13, the attorney for the minor child filed a statement adopting in its entirety the brief filed by the commissioner.

[2] Brian P. has been in the care and custody of the commissioner since then, living in the home of a nonrelative.

[3] Brian P.'s biological parents appealed from the judgment of the trial court terminating their parental rights. See *In re Brian P.*, Conn. App. , A.3d (2020). The same attorney who filed the appeal on behalf of Brian P.'s biological parents represents Susan P. in the present appeal.

[4] A social study dated May 14, 2018, stated that Susan P. was not a resource because both of the child's parents live with her, and Susan P. was part of the previous safety plan with the department during which time both parents continued to use drugs while in the home of Susan P.

[5] The typical appeal from a denial of a motion to intervene involves an interlocutory ruling. See, e.g., *BNY Western Trust* v. *Roman*, 295 Conn. 194, 202–206, 990 A.2d 853 (2010). In the unique procedural posture of the present case, Susan P. filed her motion to intervene after the court rendered its final judgment terminating parental rights to the child. Regardless of whether the question of our subject matter jurisdiction concerns the party status prong or the final judgment prong of § 52-263, our analysis turns on whether a colorable clam for intervention as a matter of right has been made. See *King* v. *Sultar*, 253 Conn. 429, 436, 754 A.2d 782 (2000).

[6] There are "two types of intervention . . . [i]ntervention as of right provides a legal right to be a party to the proceeding that may not be properly denied by the exercise of judicial discretion. Permissive intervention means that, although the person may not have the legal right to intervene, the court may, in its discretion, permit him or her to intervene, depending on the circumstances." (Internal quotation marks omitted.) *Austin-Casares* v. *Safeco Ins. Co. of America*, 310 Conn. 640, 663–64, 81 A.3d 200 (2013).

[7] On rare occasions, a transfer of guardianship occurs with the termination of parental rights. See *In re Brayden E.-H.*, 309 Conn. 642, 644, 72 A.3d 1083 (2013).

[8] "Our statutory scheme provides five permanency options: (1) reunification with a parent; (2) long-term foster care; (3) permanent guardianship; (4)

transfer of either guardianship or permanent guardianship; or (5) termination followed by adoption. General Statutes §§ 17a-111b (c) and 46b-129 (k) (2)." (Footnotes omitted; internal quotation marks omitted.) *In re Adelina A.*, 169 Conn. App. 111, 121, 148 A.3d 621, cert. denied, 323 Conn. 949, 169 A.3d 792 (2016).

[9] We do not comment on whether Susan P. properly could have intervened in the termination proceedings prior to judgment.