******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., dissenting. The majority holds that the defendant, William Hyde Bradley, does not have standing to challenge the constitutionality of the statute under which he was convicted, General Statutes § 21a-277 (b). This holding is counterintuitive because the standing doctrine exists, as the majority correctly states, to ensure that a litigant has a " 'real interest,' " as opposed to merely a " 'general interest,' " in the subject matter of the controversy. "Standing . . . is a *practical* concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions [that] may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Emphasis added; internal quotation marks omitted.) *Soto* v. *Bushmaster Firearms International, LLC*, 331 Conn. 53, 96–97, 202 A.3d 262, cert. denied sub nom. *Remington Arms Co., LLC* v. *Soto*, U.S. , 140 S. Ct. 513, 205 L. Ed. 2d 317 (2019). In my view, a defendant facing prosecution under § 21a-277 (b), which carries a maximum sentence of seven years of incarceration and a $25,000 fine for a first offense; see General Statutes § 21a-277 (b) (2) (A); has sufficient motivation vigorously to pursue a claim that the statute is unconstitutional under the equal protection clause of the United States constitution, regardless of the defendant's race or ethnicity. I respectfully dissent for this reason.

Elemental to the rule of law is the precept that "an act of the legislature, repugnant to the constitution, is void . . . ." *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803). Justice Ruth Bader Ginsburg stated a corollary to that proposition in *Bond* v. *United States*, 564 U.S. 211, 131 S. Ct. 2355, 180 L. Ed. 2d 269 (2011): "[a criminal] defendant . . . has a personal right not to be convicted under a constitutionally invalid law." Id., 226 (Ginsburg, J., concurring). Among other authorities, Justice Ginsburg cites in support an article written by Professor Richard H. Fallon, Jr., a leading legal scholar in the field of constitutional law. See id., citing R. Fallon, "As-Applied and Facial Challenges and Third-Party Standing," 113 Harv. L. Rev. 1321, 1331–33 (2000). Professor Fallon explains the connection between Chief Justice John Marshall's "valid law"[1] pronouncement in *Marbury* and a defendant's standing to challenge a conviction under an allegedly invalid criminal law: "Within [Professor Fallon's] understanding of constitutional law, the valid rule requirement is fundamental. Its roots lie in the history and structure of the [c]onstitution and in the deeper values that the [c]onstitution serves. The notion that an 'invalid law' is not law at all underlies *Marbury* . . . . And the foundations of *Marbury*, in turn, inhere in the ideal of the rule of law, which demands that '[t]he law should rule

officials, including judges,' and precludes them from imposing legal disabilities not authorized by (valid) law. This ideal explains why it is almost universally acknowledged that criminal defendants must be set free when the statutes under which they were convicted are held invalid (under the [f]irst [a]mendment, for example), even when their conduct is not absolutely privileged against governmental regulation, and even when a lawmaking authority has attempted to prohibit their conduct. If the statute under which a defendant is convicted is invalid . . . the defendant's conviction must be reversed for the sole and simple reason that there is no constitutionally valid rule of law under which the defendant could be sanctioned . . . . Through the history of American constitutionalism, there has been wide debate about which (if any) 'remedies' for constitutional violations are constitutionally required, but never about the proposition that a defendant cannot be sanctioned without the authority of a valid law." (Footnotes omitted.) R. Fallon, supra, 1331–33.

The majority in the present case points out that Justice Ginsburg's opinion in *Bond* is a concurrence and finds it unpersuasive because the cases on which she relies involve claims of third-party standing. Justice Ginsburg's citation to third-party standing cases does not reflect any doctrinal confusion on her part. Her concurring opinion makes two points. First, as I discussed, Justice Ginsburg contends that a criminal defendant has first-party standing because he "has a *personal* right not to be convicted under a constitutionally invalid law." (Emphasis added.) *Bond* v. *United States*, supra, 564 U.S. 226 (Ginsburg, J., concurring). She relies on a fundamental due process principle, not third-party standing cases, in support of this assertion. See id., 226–27 (Ginsburg, J., concurring), citing *North Carolina* v. *Pearce*, 395 U.S. 711, 739, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (Black, J., concurring in part and dissenting in part) ("[d]ue process . . . is a guarantee that a man should be tried and convicted only in accordance with valid laws of the land"), and *Ex parte Siebold*, 100 U.S. 371, 376–77, 25 L. Ed. 717 (1880) ("[a] conviction under [an unconstitutional law] is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment").

Justice Ginsburg then makes a second point, for which she cites the third-party standing cases: if a third party has standing to challenge "criminal laws infected with discrimination," then, a fortioari, the person actually prosecuted and punished under the allegedly unconstitutional law must have standing. *Bond* v. *United States*, supra, 564 U.S. 227 (Ginsburg, J., concurring); see id., 227 ("[t]he [c]ourt must entertain the objection [of discriminatory animus]—and reverse the conviction—even if the right to equal treatment resides in someone other than the defendant").[2] If a litigant has standing to challenge an invalid statute as a third party

on the basis of the harm it inflicts on another person, Justice Ginsburg states, then, of course, the person harmed (i.e., the criminal defendant) must have first-party standing to challenge the statute being enforced directly against him in a criminal prosecution. Cf. *Campbell* v. *Louisiana*, 523 U.S. 392, 400, 118 S. Ct. 1419, 140 L. Ed. 2d 551 (1998) (holding that white defendant had third-party standing to raise equal protection challenge to discriminatory selection of grand jurors and also "ha[d] standing to litigate [the violation of] his . . . own due process rights").

I regret that the majority opinion does not give greater weight to Justice Ginsburg's trenchant analysis. I would suggest that the defendant in the present case, like the petitioner in *Bond*, has a personal interest in vindicating the underlying constitutional values at stake.[3] The defendant has a *personal* right not to be convicted under a constitutionally invalid rule and to vindicate the precious values that, for the past 150 years, have been enshrined in the equal protection clause. Racial and ethnic equality is a value from which every individual derives a profound and enduring benefit. Cf. *Trafficante* v. *Metropolitan Life Ins. Co.*, 409 U.S. 205, 210, 93 S. Ct. 364, 34 L. Ed. 2d 415 (1972) (holding that white tenant had standing to bring suit for racial discrimination in housing because both white and black tenants are injured by "the loss of important benefits from interracial associations"). Indeed, it becomes increasingly obvious each day that all of us, regardless of our own particular race or ethnicity, hold a collective interest in equal treatment for all persons, and that such equality can be achieved only if nonminorities stand with other oppressed groups to enforce and vindicate equal rights. The goal of equality under the law is doomed to fail if only the oppressed groups themselves are permitted to advocate for equal treatment.

Finally, although there may be other litigants with a stronger interest than the defendant in vindicating the abstract principles underlying the equal protection clause, the standing doctrine does not require a litigant to be the best (or even a strong) representative of the interest at stake. See, e.g., *Saunders* v. *KDFBS, LLC*, 335 Conn. 586, 604, 239 A.3d 1162 (2020) ("[a]ggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected" (internal quotation marks omitted)). Various cases striking down discriminatory statutes animated by archaic and overbroad generalizations regarding gender stereotypes, for example, were litigated by male plaintiffs. See, e.g., *Califano* v. *Goldfarb*, 430 U.S. 199, 201, 208, 97 S. Ct. 1021, 51 L. Ed. 2d 270 (1977) (man challenged gender based discrimination under Federal Old-Age, Survivors, and Disability Insurance Benefits program, and court held that statute was unconstitutional because "female insureds received less protection for their spouses solely

because of their sex"); *Weinberger* v. *Wiesenfeld*, 420 U.S. 636, 641, 651, 95 S. Ct. 1225, 43 L. Ed. 2d 514 (1975) (man challenged provision of Social Security Act, arguing that it was "unconstitutional to the extent that men and women are treated differently," and court agreed, holding that "the [gender based] distinction . . . is entirely irrational"). That fact may be ironic, but it does not dilute the importance of the right being vindicated or the personal interest motivating the party litigating the claim. The defendant in the present case was convicted and sentenced under what he claims to be an invalid penal law. The defendant therefore has a distinct personal interest sufficient to ensure that he vigorously will litigate his constitutional attack on the legitimacy of the statute

I would reverse the judgment of the Appellate Court and remand the case to that court for a decision on the merits of the defendant's claim.

[1] The " 'valid rule requirement' " encompasses "the notion that everyone has a personal constitutional right not to be subjected to governmental sanctions except pursuant to a constitutionally valid rule of law." R. Fallon, supra, 113 Harv. L. Rev. 1331.

[2] In addition, numerous scholars have pointed out that the third-party standing cases easily can be recast as first-party standing cases. See, e.g., W. Fletcher, "The Structure of Standing," 98 Yale L.J. 221, 244 (1988) ("Properly understood . . . [third-party] standing cases are not conceptually different from other standing cases. In [third-party] standing cases, as in all standing cases, the issue is a question of law on the merits: Does the plaintiff have the right to enforce the legal duty in question?"); see also R. Fallon, supra, 113 Harv. L. Rev. 1360 (observing that "commentators have argued that many, if not most, seeming departures from the prohibition against third-party standing can be understood as applications of the familiar valid rule requirement [i.e., as first-party standing cases]").

[3] The majority contends that the defendant's standing argument is circular because his contention that "he has a right not to be convicted of [violating] an unconstitutional statute assumes the merits of his equal protection claim." The "circular" structure of defendant's argument is a relatively common feature of many cases in which a jurisdictional issue and the merits become intertwined or even indistinguishable. See, e.g., *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 466 n.11, 239 A.3d 272 (2020) (recognizing that, "in certain circumstances the question of jurisdiction [may be so] intertwined with the merits of the case [such] that the issue of whether the court has jurisdiction over the plaintiffs' claims and whether the plaintiffs ultimately can prevail on those claims appear to turn on the same question" (internal quotation marks omitted)); *Angersola* v. *Radiologic Associates of Middletown, P.C.*, 330 Conn. 251, 277–78, 193 A.3d 520 (2018) (same).