******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# KOSEL EQUITY, LLC *v.* MARK MACGREGOR ET AL.
## (SC 21184)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

The plaintiff landlord appealed to this court, upon certification by the Chief Justice pursuant to statute (§ 52-265a) that a matter of public interest was involved, from the trial court's decision to grant the motion of the Middletown Fair Rent Commission to intervene in the plaintiff's summary process action against the defendant tenant, M, which was based on, inter alia, M's alleged nonpayment of rent. Before moving to intervene in the summary process action, the commission had issued two decisions in response to certain fair rent commission complaints that M had filed against the plaintiff. In those decisions, the commission found, inter alia, that the plaintiff had retaliated against M by serving him with a notice to quit within six months of the filing of his initial fair rent commission complaint, in violation of statute (§ 47a-20), and ordered the plaintiff to cease and desist from pursuing eviction proceedings and to accept a certain amount as monthly rent during the pendency of the initial complaint. The plaintiff filed separate administrative appeals in the Superior Court from the commission's two decisions, and those appeals remained pending at the time of the present appeal. In its motion to intervene, the commission had explained that its purpose in intervening was to enforce its cease and desist order, to defend its capacity to adjudicate complaints and issue orders, and to protect the public policy undergirding fair rent commissions more broadly. On appeal, the plaintiff claimed that the trial court had improperly granted the commission's motion to intervene. *Held*:

A review of the relationship between the fair rent commission statutes (§§ 7-148b through 7-148f) and the relevant landlord-tenant and summary process statutes (§§ 47a-20, 47a-20a and 47a-33) made it clear that, although fair rent and summary process proceedings involve separate adjudications before different decision makers, there is a substantive connection between the subject matters of those proceedings, and the issues and remedies subject to adjudication in those different forums can converge when the proceedings involve the same underlying factual circumstances.

Moreover, a review of federal and state case law, as well as the relevant federal rules of civil procedure, led this court to conclude, with respect to the issue of permissive intervention by a governmental entity, that the rules governing permissive intervention should be liberally construed when a governmental agency seeks to intervene in a case that may impact the proper construction and application of statutes that delineate the agency's powers, proper operation, or enforcement authority.

The plaintiff could not prevail on its claim that the commission lacked standing to intervene in the plaintiff's summary process action.

It was unnecessary for this court to address the issue of whether the usual standing requirements apply in the context of permissive intervention because, regardless of the precise standing analysis to be applied, if any, it was clear that the commission had met the prerequisites for permissive intervention as a governmental entity, as the claims subject to adjudication in the summary process action, which involved the same landlord, tenant, and premises as those involved in the pending administrative appeals from the commission's decisions, were of sufficient legal interest to the commission to confer any necessary standing for purposes of permissive intervention.

The trial court did not abuse its discretion in granting the commission's motion to intervene under the circumstances of the present case.

The trial court fully considered all of the factors relevant to a determination of whether intervention should be allowed, including the timeliness of the commission's intervention, the commission's interest in the controversy, whether the commission's interests were adequately represented by the parties to the summary process action, the delay in the proceedings and the prejudice to the parties that the commission's intervention might cause, and the value of the commission's intervention in resolving the controversy.

With respect to the commission's interest in intervening in the summary process action, the trial court recognized that the summary process action and the administrative proceedings involved overlapping issues, including what constituted fair rent and whether there was nonpayment of rent or retaliation, and also recognized that the commission had an interest in protecting its jurisdiction and its authority to issue and enforce orders setting proper rental amounts and enjoining retaliatory conduct.

Accordingly, the trial court acted within its discretion in concluding that the commission had a substantial institutional interest in litigating in support of its preferred construction of the fair rent commission statutory scheme and that the commission was not intervening as an advocate for M but, rather, to promote its own institutional interests.

Furthermore, there was no merit to the plaintiff's claim that the commission could not intervene in the absence of express statutory authority or that the trial court improperly based its decision to grant the commission's motion on considerations of judicial economy.

Argued March 2—officially released June 30, 2026

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of Middlesex, Housing Session at Middletown, where the court, *Menjivar, J.*, granted the motion to intervene filed by the Middletown Fair Rent Commission; thereafter, upon certification by the Chief Justice pursuant to General Statutes § 52-265a

that a matter of substantial public interest was involved, the plaintiff appealed to this court. *Affirmed.*

*Ian G. Gottlieb*, with whom were *David E. Rosenberg* and *Paul J. Small*, for the appellant (plaintiff).

*Jane Kelleher*, for the appellee (named defendant).

*Philip G. Kent*, for the appellee (intervenor Middletown Fair Rent Commission).

*Jeffrey Gentes* and *Anika Singh Lemar*, and *Galen Fastie*, *Grady Martin*, *Uma Menon* and *Dylan Shapiro*, law student interns, filed a brief for the New Haven Legal Assistance Association et al. as amici curiae.

*Jeffrey R. Babbin* and *Caitlyn Doerr* filed a brief for the National Apartment Association et al. as amici curiae.

*Opinion*

ECKER, J. This is the companion case to *TOV Realty, LLC* v. *Suarez*, 354 Conn. 745, A.3d (2026), which we decided on June 9, 2026. Both cases are public interest appeals concerning the discretion of a trial judge to utilize certain well established procedural devices to facilitate the sensible and efficient adjudication of disputed issues in a summary process action that are also the subject of a pending administrative appeal of a fair rent commission decision involving the same landlord, tenant and premises. In *TOV Realty, LLC*, we held that the trial court properly stayed the summary process action pending adjudication of the ongoing administrative appeal. See id., 747–48, 765. The present appeal requires us to determine whether the trial court in the summary process action properly granted permissive intervention to a fair rent commission that had ordered the landlord to cease and desist from pursuing eviction proceedings and to accept a specified rental amount while the tenant's previously filed fair rent complaint remained pending. We conclude that the trial court did not abuse its discretion by granting the fair rent commission's motion to intervene to advocate its institutional

interests, in particular, its statutory authority to act in the public interest by adjudicating fair rent complaints and enforcing its resulting orders.

The record reflects the following facts. The named defendant, Mark MacGregor,[1] entered into an agreement to lease an apartment located in Middletown from the plaintiff, Kosel Equity, LLC, from May 1, 2024, through April 30, 2025. The lease set a monthly rent of $1500, but the plaintiff agreed in a "concession addendum" to accept a monthly rent of $1175 for the term of the lease.

On April 21, 2025, the defendant filed a fair rent complaint against the plaintiff's property manager, Up Realty, LLC, with the Middletown Fair Rent Commission (MFRC), claiming that the plaintiff had informed him that, beginning on May 1, 2025, his monthly rent was increasing from $1175 to $1500. The complaint alleged, among other things, that the defendant's rent had increased each of the past two years of his tenancy, while, over that same period, the housing conditions and services had deteriorated. The MFRC sent the plaintiff a letter on April 23, 2025, attaching the complaint, setting an answer date, and advising the plaintiff that it was "prohibited from retaliating against the tenant(s) in any manner due to the filing of the complaint." In particular, the notice stated that "no landlord may engage in any action prohibited by . . . General Statutes § 47a-20 . . . within six months after the filing of a complaint by the tenant(s) with the [MFRC]," and referenced the antiretaliation provision in § 14-81 (formerly § 14-78) of the Middletown Ordinances.[2]

After filing his fair rent complaint, the defendant mailed two checks totaling $1175 to Up Realty, LLC, as rent for the month of May, 2025. The checks were

---

[1]Jane Doe and John Doe were also named as defendants in the underlying summary process action, but the plaintiff subsequently withdrew its action as to those individuals. See footnote 4 of this opinion. For convenience, we refer to MacGregor as the defendant.

[2]One retaliatory action enumerated in § 47a-20 is "maintain[ing] an action or proceeding against a tenant to recover possession of a dwelling unit . . . ." Section 14-81 (A) of the Middletown Ordinances provides

returned to the defendant with a message stating that personal checks could not be accepted "[d]ue to [the defendant's] legal status . . . ."[3] On May 14, 2025, the plaintiff served the defendant with a notice to quit possession of the apartment by June 23, 2025. The notice to quit alleged nonpayment of rent as one reason for the eviction[4] and stated that any payment tendered after service of the notice would not be accepted as rent. After receiving the notice to quit, the defendant filed a second complaint with the MFRC, alleging that the plaintiff had retaliated against him because of the complaint he had filed on April 21, 2025.

The MFRC held a hearing on the defendant's retaliation claim on May 28, 2025, and issued a notice of decision on June 18, 2025, finding that the plaintiff's issuance of the notice to quit was prohibited retaliatory conduct. Pursuant to General Statutes § 7-148d (b) and § 14-81 (C) of the Middletown Ordinances, the MFRC ordered the plaintiff "to cease and desist from retaliatory conduct and to withdraw or remediate the notice to quit that was served." Pursuant to General Statutes § 7-148d (a) and § 14-80 (B) of the Middletown Ordinances,[5] the MFRC also ordered the plaintiff "to accept $1175 as rent . . . from the [defendant] during the pendency of [his fair rent] complaint."

On July 14, 2025, the plaintiff filed in the Superior Court an administrative appeal from the MFRC's decision

in relevant part: "Retaliatory actions by a landlord include but are not limited to . . . (1) . . . any action prohibited by . . . [§] 47a-20 . . . ."

[3] In June, 2025, the defendant again mailed two checks totaling $1175 to Up Realty, LLC, but these checks were returned to the defendant with a similar message.

[4] In addition to the defendant, the notice to quit named Jane Doe and John Doe as tenants or occupants, and alleged as additional grounds for eviction that these three individuals never had the right or privilege to occupy the premises, or that any such right had terminated. See General Statutes § 47a-23 (a) (2) and (3).

[5] Section 14-80 (B) of the Middletown Ordinances provides in relevant part: "If the [MFRC] determines after a hearing that the rental charge or proposed increase in the rental charge for any housing accommodation is so excessive . . . as to be harsh and unconscionable, it may order

and order in accordance with General Statutes § 7-148e. In its administrative appeal, the plaintiff claimed that (1) a contractually agreed on rent is not a rent increase within the MFRC's jurisdiction, (2) under General Statutes § 47a-20a, a summary process action alleging nonpayment of rent is not retaliatory, and (3) the MFRC had no authority to order the plaintiff to withdraw its notice to quit. That administrative appeal remains pending.

In the meantime, the plaintiff initiated this summary process action against the defendant on July 7, 2025, alleging, among other grounds, nonpayment of rent. The defendant responded by filing a third complaint against the plaintiff with the MFRC, again alleging retaliation. The MFRC held a hearing on this third complaint on July 9, 2025, and issued its notice of decision on July 23, 2025. In its decision, the MFRC "disagreed with [the plaintiff's] argument that . . . [its] summary process action could not be deemed to be retaliatory . . . because it was purportedly brought for nonpayment of rent." The MFRC ordered the plaintiff "to cease and desist from pursuing the notice to quit and to withdraw the pending summary process action . . . ." Finding that the plaintiff had violated the MFRC order of June 18, 2025, the MFRC fined the plaintiff $100 for the period from June 19 through 23, 2025, and $100 for each subsequent day until the notice to quit and summary process action are withdrawn. The plaintiff thereafter filed an administrative appeal from the MFRC's decision and order regarding the defendant's third complaint, raising the same issues as in its first administrative appeal. This second administrative appeal also remains pending.

In a motion captioned "[The MFRC's] Motion To Intervene and Motion To Dismiss, or, in the Alternative to Dismissal, Motion To Stay," filed on July 25, 2025, the MFRC sought to intervene in the summary process action pursuant to General Statutes §§ 52-102 and 52-107, and Practice Book § 9-18. The MFRC explained that it wished

that the rent be limited to such an amount as it determines to be fair and equitable . . . ."

to intervene "for the purposes of enforcing its [cease and desist] order . . . and to defend its capacity to adjudicate complaints (including claims of retaliation), issue orders, and carry out the provisions of" Connecticut's fair rent statutes and Middletown's fair rent ordinances, as well as "to protect the public policy undergirding fair rent commissions more broadly." The MFRC also asked the trial court to dismiss the summary process action, claiming that the court lacked subject matter jurisdiction because the plaintiff had failed to exhaust its administrative remedies, or, in the alternative, to stay the action pending the outcome of the ongoing administrative appeal. On July 28, 2025, the defendant filed his answer and special defenses in the summary process action, in which he argued, among other things, that the plaintiff had retaliated against him.

The trial court heard argument on, and then granted, the MFRC's motion to intervene in the summary process action on November 10, 2025. During the hearing, the trial court recognized that an order of possession in the summary process action would not itself directly affect the MFRC but opined that the MFRC had alleged "an interest in protecting [its] lawful orders, protecting [its] authority, [and] protecting [its] jurisdiction," particularly in light of the issues common to the summary process action and the two pending administrative appeals, such as the MFRC's finding of retaliation and the plaintiff's allegation of nonpayment of rent. In addition, the court discussed with counsel a variety of other considerations, including the potential overlap between arguments likely to be made by the defendant and the MFRC, if permitted to intervene, the MFRC's ability to provide additional information to the court, the timing of the MFRC's motion to intervene, and whether the defendant had made continued use and occupancy payments to the plaintiff. The court granted permissive intervention, reasoning that "there will be legal issues [in the administrative appeals and the summary process action] that will overlap, that [intervention is]

not going to cause undue delay, [and] that there's not undue prejudice to either party . . . ."

On November 24, 2025, the plaintiff filed an application for certification to file an interlocutory public interest appeal pursuant to General Statutes § 52-265a. Chief Justice Mullins granted the plaintiff's application on December 1, 2025. On December 5, 2025, this court directed the parties to address the following issues: (1) "[w]hether the trial court improperly granted the [MFRC's] motion for permissive intervention in the summary process action," and (2) "[w]hether the trial court has subject matter jurisdiction over the underlying summary process action when the [MFRC] argues that (a) its cease and desist order renders the plaintiff's notice to quit 'invalid,' and (b) the plaintiff failed to exhaust its administrative remedies . . . ."[6] Additional facts and background relevant to this appeal will be provided as necessary.

I

RELEVANT STATUTORY FRAMEWORK

Resolution of this appeal requires us to determine the proper interaction between two different but related statutory schemes governing the landlord-tenant relationship, namely, the summary process and the fair rent commission statutes. Those statutes are discussed at length in part I of this court's decision in the companion case, *TOV Realty, LLC* v. *Suarez*, supra, 354 Conn. 752–61, and that discussion will not be repeated except as necessary to highlight those provisions most pertinent to the present appeal.

_____

[6]Upon consideration, we have concluded that we lack jurisdiction to reach the second question, which concerns questions raised in the as yet unadjudicated motion to dismiss. As we explained in *TOV Realty, LLC*, with respect to the issues yet to be adjudicated by the trial court in that case, this court is without jurisdiction in an interlocutory public interest appeal to decide such issues because "the plaintiff . . . is not yet 'aggrieved by an order or decision of the Superior Court' for purposes of our review under § 52-265a (a)." *TOV Realty, LLC* v. *Suarez*, supra, 354 Conn. 766.

It is well established that the summary process statutes create "a special statutory procedure designed to provide an expeditious remedy . . . [by] enabl[ing] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms." (Internal quotation marks omitted.) *Waterbury Twin, LLC* v. *Renal Treatment Centers–Northeast, Inc.*, 292 Conn. 459, 466, 974 A.2d 626 (2009). See generally General Statutes §§ 47a-23 through 47a-42a. That said, a landlord is not free to use summary process to retake possession of property under any and all circumstances.

Of particular relevance to the present case are three antiretaliation provisions contained in the summary process statutes. Section 47a-20 provides in relevant part: "A landlord shall not maintain an action or proceeding against a tenant to recover possession of a dwelling unit . . . within six months after: (1) [t]he tenant has in good faith . . . fil[ed] a complaint with a fair rent commission . . . ." This provision " 'establishes retaliation as a presumption, if a summary process action is initiated within six months of a complaint, [that] the landlord must successfully rebut.' " *Holdmeyer* v. *Thomas*, 167 Conn. App. 544, 548, 144 A.3d 1052 (2016), quoting *Visco* v. *Cody*, 16 Conn. App. 444, 450 n.7, 547 A.2d 935 (1988).

The presumption of retaliation established by § 47a-20 is not absolute. In addition to the requirement in § 47a-20 that the fair rent complaint be filed in good faith, § 47a-20a enumerates four grounds—including nonpayment of rent—as the exclusive means by which a landlord may rebut that presumption.[7] See General Statutes § 47a-20a (a); see also *Correa* v. *Ward*, 91 Conn. App. 142, 147, 881 A.2d 393 (2005). In more than two dozen decisions dating back to 1979, numerous judges of the Superior Court

---

[7] Section 47a-20a (a) (1) permits a "landlord [to] maintain an action to recover possession of [a] dwelling unit" on the ground that the "tenant is using the dwelling unit for an illegal purpose or for a purpose which is in violation of the rental agreement or for nonpayment of rent . . . ."

have stated that, to rebut the presumption of retaliation, a landlord must produce "substantial countervailing evidence" of at least one of the four grounds enumerated in § 47a-20a. *Alteri* v. *Layton*, 35 Conn. Supp. 261, 264, 408 A.2d 18 (1979).

Finally, General Statutes § 47a-33 enumerates circumstances under which a tenant may raise retaliation as a special defense to a summary process action, even when the operation of § 47a-20a defeats the presumption that would otherwise apply under § 47a-20. These circumstances include when "the plaintiff brought [the summary process] action solely because the defendant . . . fil[ed] a complaint with a fair rent commission . . . ."[8] General Statutes § 47a-33. Thus, if a tenant cannot benefit from a presumption of retaliation under § 47a-20 because, for example, the eviction is for nonpayment of rent, then the tenant may still raise retaliation as a special defense pursuant to § 47a-33. In that situation, the tenant carries the burden of demonstrating that the landlord's sole motivation for bringing the summary process action was the tenant's exercise of one or more of the rights specified in the statutory provision. See *Alteri* v. *Layton*, supra, 35 Conn. Supp. 264–65; see also *TOV Realty, LLC* v. *Suarez*, supra, 354 Conn. 755.

Turning to the statutory provisions governing the powers and proceedings of the fair rent commissions, we note that the principal components of the relevant legislation and certain key portions of the legislative history are set forth in part I B of our decision in *TOV Realty, LLC* v. *Suarez*, supra, 354 Conn. 755–61. General Statutes (Supp. 2026) § 7-148b (b)[9] provides in relevant part that

---

[8]General Statutes § 47a-33 also provides in relevant part that "[t]he obligation on the part of the defendant to pay rent or the reasonable value of the use and occupancy of the premises which are the subject of any such action shall not be abrogated or diminished by any provision of this section."

[9]The recent amendments to § 7-148b; see Public Acts, Spec. Sess., November, 2025, No. 25-1, § 35; Public Acts 2025, No. 25-121, § 1; have no bearing on the merits of this appeal. For purposes of clarity and convenience, hereinafter, all references to § 7-148b are to the current version of the statute.

"[a]ny municipality may, and each municipality with a population of fifteen thousand or more . . . shall, through its legislative body, adopt an ordinance" either creating a fair rent commission or joining an existing commission. Importantly, § 7-148b (b) also expressly links the duties of the fair rent commissions to the antiretaliation provisions of § 47a-20 by stating that a "commission shall make studies and investigations, conduct hearings and receive complaints relative to rental charges on housing accommodations . . . in order to control and eliminate excessive rental charges on such accommodations, *and to carry out the provisions of* sections 7-148b to 7-148f, inclusive, *section 47a-20* and subsection (b) of section 47a-23c." (Emphasis added.) The statutory scheme goes on to provide that, "[i]f a commission determines, after a hearing, that the rental charge or proposed increase in the rental charge for any housing accommodation is so excessive . . . as to be harsh and unconscionable, it may order that the rent be limited to such an amount as it determines to be fair and equitable."[10] General Statutes § 7-148d (a); see also *Lawrence* v. *Fair Rent Commission*, Docket No.

[10]General Statutes § 7-148c provides a multifactor inquiry to carry out this particular function: "In determining whether a rental charge or a proposed increase in a rental charge is so excessive, with due regard to all the circumstances, as to be harsh and unconscionable, a fair rent commission shall consider such of the following circumstances as are applicable to the type of accommodation: (1) The rents charged for the same number of rooms in other housing accommodations in the same and in other areas of the municipality; (2) the sanitary conditions existing in the housing accommodations in question; (3) the number of bathtubs or showers, flush water closets, kitchen sinks and lavatory basins available to the occupants thereof; (4) services, furniture, furnishings and equipment supplied therein; (5) the size and number of bedrooms contained therein; (6) repairs necessary to make such accommodations reasonably livable for the occupants accommodated therein; (7) the amount of taxes and overhead expenses, including debt service, thereof; (8) whether the accommodations are in compliance with the ordinances of the municipality and the general statutes relating to health and safety; (9) the income of the petitioner and the availability of accommodations; (10) the availability of utilities; (11) damages done to the premises by the tenant, caused by other than ordinary wear and tear; (12) the amount and frequency of increases in rental charges; (13) whether, and the extent to which, the income from an increase in rental charges has been or will be reinvested in improvements to the accommodations."

CV-H-8501-1613, 1989 WL 516454, \*4 (Conn. Super. April 12, 1989) ("[t]he statutory and municipal authority vested in the [fair rent commissions] concerning the adjustment and suspension of rental payments is both broad and discretionary").

In addition to authorizing fair rent commissions to exercise their powers to carry out the antiretaliation provisions of §47a-20, the legislature explicitly granted specific enforcement powers to fair rent commissions. "If the commission determines, after a hearing, that a landlord has retaliated in any manner against a tenant because the tenant has complained to the commission, the commission may order the landlord to cease and desist from such conduct." General Statutes §7-148d (b). Moreover, "[a]ny person who violates any order of rent reduction or rent suspension . . . *or violates any . . . provision of . . . section 47a-20*, or who refuses to obey any subpoena, order or decision of a commission pursuant thereto, shall be fined not less than twenty-five dollars nor more than one hundred dollars for each offense. If such offense continues for more than five days, it shall constitute a new offense for each day it continues to exist thereafter." (Emphasis added.) General Statutes §7-148f.

Although fair rent and summary process proceedings involve separate adjudications before different decision makers, the foregoing review of the statutory schemes demonstrates that the legislature expressly recognized a substantive connection between the subject matters of those proceedings in numerous provisions of the statutes, including §§47a-20 and 47a-33 (both of which reference complaints to a fair rent commission as grounds for retaliation), §7-148b (b) (empowering a fair rent commission to exercise its powers "to carry out the provisions of . . . section 47a-20"), and §7-148f (authorizing a fair rent commission to impose fines on any person who has been found to violate §47a-20). And, as our decision in *TOV Realty, LLC*, recognizes, the issues and remedies subject to adjudication in these different forums can converge to a substantial extent when the proceedings involve the same underlying factual circumstances. See

*TOV Realty, LLC* v. *Suarez*, supra, 354 Conn. 761–62, 764. The relevant legislative history reinforces this conclusion. See id., 759–61.

## II

### PERMISSIVE INTERVENTION

### A

The primary issue in the present appeal is whether the trial court abused its discretion by granting the MFRC's motion to intervene under §§ 52-102 and 52-107, and Practice Book § 9-18. "A party challenging a ruling on permissive intervention bear[s] the heavy burden of demonstrating an abuse of . . . discretion . . . ." (Internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 226, 884 A.2d 981 (2005). "[A]buse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors." (Internal quotation marks omitted.) Id., 224–25; see also *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 461–62, 904 A.2d 137 (2006) (" '[r]eversal of a [federal] district court's denial of permissive intervention is a very rare bird indeed, so seldom seen as to be considered unique' "), quoting *AT & T Corp.* v. *Sprint Corp.,* 407 F.3d 560, 562 (2d Cir. 2005). Indeed, this court has indicated that a trial court's discretion in this context is sufficiently broad that, if the trial court applies the correct legal standard to the circumstances of the case in a rational manner, a decision either granting or denying permissive intervention will be upheld on appeal. See *Kerrigan* v. *Commissioner of Public Health*, supra, 461–63; *Horton* v. *Meskill*, 187 Conn. 187, 198–99, 445 A.2d 579 (1982).

"Because our rules of practice provide no specific articulation of the factors to be considered in determining whether intervention should be allowed, we have turned to rule 24 of the Federal Rules of Civil Procedure for guidance. . . . In reliance on that rule, [o]ur cases estab-

lish that, in determining whether to grant a request for permissive intervention, a court should consider several factors: [1] the timeliness of the intervention, [2] the proposed intervenor's interest in the controversy, [3] the adequacy of representation of such interests by other parties, [4] the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and [5] the necessity for or value of the intervention in resolving the controversy." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 276 Conn. 225–26;[11] see also *Horton* v. *Meskill*, supra, 187 Conn. 197. These five factors provide the well established framework used by trial courts to determine whether to grant permissive intervention. See, e.g., *In re Santiago G.*, 325 Conn. 221, 226–27 and n.6, 157 A.3d 60 (2017); *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 461.

[11]The five *Rosado* factors governing permissive intervention in Connecticut combine the four factors that must be considered under rule 24 (a) (2) of the Federal Rules of Civil Procedure to determine whether a party may intervene as of right in federal court, plus the final factor that must be considered to grant permissive intervention under rule 24 (b) (3). See, e.g., *In re Holocaust Victim Assets Litigation*, 225 F.3d 191, 197 (2d Cir. 2000) (to qualify for intervention as of right under rule 24 (a) (2), "the applicant must: (1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action"); see also Fed. R. Civ. P. 24 (b) (3) ("[i]n exercising its discretion [to grant permissive intervention under rule 24 (b)], the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights"). Although the text of rule 24 (a) (intervention as of right) is not identical to that of rule 24 (b) (permissive intervention), courts as a practical matter apply the four factors set forth in rule 24 (a) (2), together with the undue delay or prejudice factor in rule 24 (b) (3), to decide whether to allow permissive intervention. See, e.g., *In re Bank of New York Derivative Litigation*, 320 F.3d 291, 300 n.5 (2d Cir. 2003). A court may, of course, exercise its discretion to allow permissive intervention even when intervention is not available as of right. See, e.g., *Securities & Exchange Commission* v. *Chestman*, 861 F.2d 49, 50 (2d Cir. 1988); see also *Connecticut Fine Wine & Spirits, LLC* v. *Harris*, Docket No. 16-cv-1434 (JCH), 2016 WL 9967919, *8–9 (D. Conn. November 8, 2016).

Before addressing the five *Rosado* factors, we observe preliminarily that the present case involves intervention by a governmental organization. There are particular considerations, mostly developed by federal courts operating under the purview of rule 24 (b) of the Federal Rules of Civil Procedure, that provide additional guidance in this context. Indeed, rule 24 (b) contains explicit guidance applicable to intervention sought by governmental actors: "On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: **(A)** a statute or executive order administered by the officer or agency; or **(B)** any regulation, order, requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24 (b) (2). This provision was promulgated in 1946 "to avoid exclusionary constructions [of rule 24 (b) when] . . . public officials seek permission to intervene, and the amendment in effect expands the concept of claim or defense[12] insofar as intervention by a governmental officer or agency is concerned." (Footnote added; footnote omitted; internal quotation marks omitted.) *Nuesse* v. *Camp*, 385 F.2d 694, 704–705 (D.C. Cir. 1967); see also *International Paper Co.* v. *Inhabitants of Jay, Maine*, 887 F.2d 338, 346 (1st Cir. 1989). Commentators have observed that "the whole thrust of [rule 24 (b) (2)] is in the direction of allowing intervention liberally to governmental agencies and officers seeking to speak for the public interest . . . ." 7C C. Wright et al., Federal Practice and Procedure (2007) § 1912, p. 472. In addition to the particularized considerations for governmental intervenors contained

[12]The phrase "claim or defense" refers to the language of rule 24 (b) (1) (B) of the Federal Rules of Civil Procedure, which provides that a court may grant permissive intervention to any person who "has a claim or defense that shares with the [case in which intervention is sought] a common question of law or fact." Because the proposed governmental intervenor may not itself have an interest in the matter based on a "claim or defense" it asserts, rule 24 (b) (2) was amended to "[allow] intervention even in situations [in which] the existence of any nominate claim or defense is difficult to find." (Internal quotation marks omitted.) *Equal Employment Opportunity Commission* v. *National Children's Center, Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

in rule 24 (b) (2), the other factors relevant to deciding a motion for permissive intervention under rule 24 (b), including the five *Rosado* factors, also remain applicable to motions to intervene by governmental entities. See *Appleton* v. *Commissioner of Internal Revenue*, 430 Fed. Appx. 135, 137–38 (3d Cir. 2011); *H.L. Hayden Co. of New York* v. *Siemens Medical Systems, Inc.*, 797 F.2d 85, 89 (2d Cir. 1986).[13]

Rule 24 (b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *Securities*

[13]We note that the vast majority of intervention cases involve governmental actors seeking to intervene in what might be called their regulatory role. See, e.g., *Nuesse* v. *Camp*, supra, 385 F.2d 698–99, 704 (District Court should have granted permissive intervention to Wisconsin state banking commissioner, whose office is responsible for enforcing state laws relating to banking, in declaratory judgment action implicating state banking law brought by Wisconsin bank against United States comptroller of currency). Alternatively, the government may move to intervene for the purpose of obtaining targeted relief, such as a stay or modification of a protective order, to protect or promote its interests as a party in a parallel or related proceeding or investigation. See, e.g., *Twenty First Century Corp.* v. *LaBianca*, 801 F. Supp. 1007, 1008–11 (E.D.N.Y. 1992) (permitting government to intervene in civil Racketeer Influenced and Corrupt Organizations Act case for limited purpose of moving to stay discovery until completion of pending criminal case against defendant); see also *Martindell* v. *International Telephone & Telegraph Corp.*, 594 F.2d 291, 294 (2d Cir. 1979) (government may "seek permissive intervention in [a] private action pursuant to [r]ule 24 (b) [of the Federal Rules of Civil Procedure] . . . for the purpose of obtaining vacation or modification of [a] protective order").

The present case is different in the sense that the MFRC acted as an adjudicator of the complaints brought by the defendant, as a tenant, against the plaintiff landlord's property manager. Our research indicates that there are only a few reported cases in which the interest of the proposed governmental intervenor arises out of its role as an adjudicator. See, e.g., *Newport News Shipbuilding & Drydock Co.* v. *Peninsula Shipbuilders' Assn.*, 646 F.2d 117, 122 (4th Cir. 1981) (holding "that the [National Labor Relations] Board had a right to intervene in order to protect its jurisdiction and processes against the possibility of a district court judgment in conflict with its own in a pending unfair labor practice proceeding"). This court approved a trial court's order permitting intervention by a governmental adjudicator in *Milford* v. *Local 1566, Council 4, AFSCME*, 200 Conn. 91, 92–93, 98–102, 510 A.2d 177 (1986), but the interest of the State Board of Mediation and

*& Exchange Commission* v. *United States Realty & Improvement Co.*, 310 U.S. 434, 459, 60 S. Ct. 1044, 84 L. Ed. 1293 (1940). This point takes on particular significance when the proposed intervenor is a governmental actor protecting its authority to act in the public interest. For example, in *United States Realty & Improvement Co.*, the Securities and Exchange Commission (SEC) moved to intervene in a corporate reorganization filed under the federal Bankruptcy Act. See id., 444–45. The District Court granted intervention, but the United States Court of Appeals for the Second Circuit reversed, holding that the SEC "had no interest affected by the proceeding . . . ." Id., 444. On appeal to the United States Supreme Court, the SEC argued "that it was properly allowed to intervene in order to protect the interest of the public specially committed to its guardianship by the provisions of [c]hapter X [of the Bankruptcy Act]," which the SEC administered with the purpose of protecting the investing public, "and to forestall the impairment of its own functions under that chapter . . . ." Id., 445; see id., 448. The Supreme Court held that permissive intervention was proper because the SEC had "a sufficient interest in the maintenance of its statutory authority and the performance of its public duties to entitle it [to] intervention . . . ." Id., 460;[14] see also *Nuesse* v. *Camp*, supra, 385 F.2d 706 ("[w]hile a public official may not intrude in a purely private controversy, permissive intervention

Arbitration in that case was focused solely on its procedure relating to the need for arbitrators to take an oath.

We leave it to the discretion of the trial courts, in the first instance, to determine whether and to what extent a proposed governmental intervenor's status as an adjudicator should factor into a court's decision regarding permissive intervention. As occurred in the present case, a trial court may conclude that the governmental actor has significant regulatory and institutional interests at stake in the private litigation apart from any narrow self-interest in defending its adjudicative outcome. On the other hand, a trial court may conclude in a different case involving a governmental adjudicator that any legitimate regulatory or institutional interests do not warrant intervention, or can be adequately safeguarded by permitting limited intervention or the right to participate as an amicus curiae. See footnote 16 of this opinion.

[14]*United States Realty & Improvement Co.* and the subsequent 1946 amendment to rule 24 (b) have been viewed as "part of an evolving

is available when sought because an aspect of the public interest with which he is officially concerned is involved in the litigation").

Connecticut case law on permissive intervention by governmental entities is not as well-developed as federal law under rule 24 (b) (2), but the most relevant decision of this court on the subject is consistent with the federal approach just described. In *Milford* v. *Local 1566, Council 4, AFSCME*, 200 Conn. 91, 92, 510 A.2d 177 (1986) (*Local 1566*), the state Board of Mediation and Arbitration (board) issued an arbitration award in favor of the employee in an employment dispute. The employer applied to the Superior Court to vacate the award on the ground that the arbitrators had failed to take a statutorily required oath before hearing the dispute. Id. The board filed a motion to intervene, which the trial court granted. Id. The court then vacated the arbitration award on the ground advocated by the employer. Id. The board appealed from the judgment, and the employer cross appealed from the order permitting intervention; id., 93; arguing that intervention was improper because the board had "no intrinsic interest in the outcome of the arbitration proceedings . . . ." Id., 94. This court concluded that the trial court had not abused its discretion by permitting the board to intervene. Id. We explained that, "[a]lthough the board does not have an interest in whether the award is ultimately vacated or confirmed, it has a significant interest in protecting the validity of the procedures used to determine the award. To vacate the award on the basis that the arbitrators were not sworn as required by law calls into question the legality of the board's proceedings and, by implication, jeopardizes the validity of almost all of its arbitration decisions." Id., 94–95. The proper functioning of the board and the validity of its decisions implicated the public interest because the board "was designed to cope with the special problems of employer-employee disputes . . . ." Id., 101.

jurisprudence" that began the trend to permit intervention by governmental entities more liberally. *Nuesse* v. *Camp*, supra, 385 F.2d 705.

### B

We first address the plaintiff's contention that the MFRC lacked standing to intervene permissively in the present summary process action. The claim warrants little discussion. "Standing is the legal right to set judicial machinery in motion" and necessitates an inquiry into "whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . ." (Internal quotation marks omitted.) *State* v. *Bradley*, 341 Conn. 72, 79–80, 266 A.3d 823 (2021). To establish standing based on classical aggrievement, which is the analysis relevant to the plaintiff's challenge, there must be a two part showing. "First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [challenged] decision has specially and injuriously affected that specific personal or legal interest." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 486–87, 815 A.2d 1188 (2003).

As an initial matter, it is not at all clear that the usual standing requirements even apply in the context of permissive intervention. The issue has not been directly addressed by this court and is the subject of substantial disagreement among federal courts and commentators alike.[15] It is unnecessary for us to reach the issue in the

---

[15]See, e.g., C. Nelson, "Intervention," 106 Va. L. Rev. 271, 284 (2020) ("[f]or more than a generation, there has been a circuit split about one specific question relating to the requirements for intervention: [d]o would-be intervenors need what the modern [United States] Supreme Court calls '[a]rticle III standing' "); see also A. Gardner, Comment, "An Attempt To Intervene in the Confusion: Standing Requirements for Rule 24 Intervenors," 69 U. Chi. L. Rev. 681, 693–98 (2002) (examining circuit split). We note that some federal courts have interpreted *United States Realty & Improvement Co.* and rule 24 (b) to mean that "a party who lacks standing can nonetheless take part in a case as a permissive intervenor." *Shaw* v. *Hunt*, 154 F.3d 161, 165 (4th Cir. 1998); see also *United States Postal Service* v. *Brennan*, 579 F.2d 188, 190 (2d Cir. 1978) ("[t]he existence of a case or controversy having been established as between the [plaintiff] and the [defendants], there was no need to impose the standing requirement [on] the proposed

present case, and we will not do so, when, as here, the parties have neither cited the relevant cases nor examined the relevant legal issues, leaving us on our own to resolve a question that has perplexed and divided a generation or more of judges and legal scholars. Regardless of the precise standing analysis to be applied, if any, it is clear to us that the MFRC has met the legal prerequisites necessary to participate in this case as a governmental entity that has been granted permissive intervention.

As described previously in this opinion, the MFRC has a significant institutional interest in a lawsuit between private parties that is likely to affect its ability to enforce the fair rent statutory scheme by issuing orders requiring a landlord to accept a specified amount for rent and to cease and desist from retaliatory conduct. The issues subject to adjudication in the present case—involving the same landlord, tenant, and premises as the MFRC administrative decisions now pending in the administrative appeals in the Superior Court—are of sufficient legal interest to the MFRC to support its permissive intervention and to confer any necessary standing for that purpose.[16]

On the merits, it is clear to us that the trial court acted within its discretion in granting the MFRC's motion for

intervenor"). Commentators likewise have remarked that permissive intervention involves a less restrictive standing requirement in that "a permissive intervenor does not even have to be a person who would have been a proper party at the beginning of the suit . . . ." (Footnote omitted.) 7C C. Wright et al., supra, § 1911, pp. 451–52. In the context of intervention as of right, the United States Supreme Court has held that a proposed intervenor "must have [a]rticle III standing in order to pursue relief that is different from that which is sought by a party with standing." *Chester* v. *Laroe Estates, Inc.*, 581 U.S. 433, 440, 137 S. Ct. 1645, 198 L. Ed. 2d 64 (2017). The present case involves only permissive intervention.

[16]Neither party proposed that any limitations be placed on the scope of the MFRC's participation as intervenor in the summary process action, and, to date, the trial court has imposed no such limitations. See, e.g., *Stringfellow* v. *Concerned Neighbors in Action*, 480 U.S. 370, 378, 107 S. Ct. 1177, 94 L. Ed. 2d 389 (1987) ("while the District Court restricted [the intervenor's] ability to participate as fully as it might wish . . . [w]e . . . refuse to find that the grant of permissive intervention, even though subject to conditions, should be treated as a complete denial of the right to participate"); *In re Shanaira C.*, 297 Conn. 737, 752 n.17, 1 A.3d 5

permissive intervention under the circumstances of this case. The trial court's discussion with counsel and its oral decision explored all of the *Rosado* factors as applied to the particular circumstances of this case. The motion to intervene was filed less than three weeks after the plaintiff filed its summary process action. The MFRC filed an accompanying memorandum of law, in which it argued, among other things, that intervention was proper under each of the *Rosado* factors. The plaintiff thereafter filed an opposing memorandum of law, arguing that the MFRC was barred as a matter of law from intervening in the summary process action because it lacked standing to do so.[17] The plaintiff did not address the *Rosado* factors and failed to present any argument that intervention would cause prejudice to the plaintiff in the form of delay, financial harm, or otherwise.

At the hearing on the motion, the trial court discussed all of the *Rosado* factors in the course of its colloquies with counsel. Each side was permitted to present its arguments without constraint. Both sides addressed, to some degree, each of the *Rosado* factors, primarily the MFRC's interests and the adequacy of representation of these interests by the existing parties, the timeliness

(2010) ("intervention may be granted limited to certain discrete issues"). Trial courts will sometimes grant a nonparty limited intervention rights as a means to obtain the benefits of the intervenor's participation but to avoid burdening the court and the parties with the attendant inefficiencies that can result if the limited intervenor has full party status. See *Dept. of Fair Employment & Housing* v. *Lucent Technologies, Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (" '[a] district court's discretion . . . under [r]ule 24 (b) . . . to grant or deny an application for permissive intervention includes discretion to limit intervention to particular issues' "). Alternatively, a trial court may determine that, although the circumstances do not warrant intervention, the court would benefit from the would-be intervenor's participation as an amicus curiae. See *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 463 ("the trial court recognized the import of the [proposed intervenor's] expertise in this area . . . by permitting it to participate as an amicus curiae").

[17]Because the MFRC's motion to intervene also contained, in the same document, a motion to dismiss or stay the summary process action, the plaintiff's opposition brief included numerous arguments addressing the motion to dismiss or stay. The trial court has not ruled on the motion to dismiss or stay. See footnote **6** of this opinion.

of intervention and any related delay or prejudice to the existing parties, and the necessity or value of intervention in resolving the controversy. The plaintiff's counsel focused his argument on the contention that the MFRC had no authority to determine an appropriate monthly rent when the lease contains a contractual agreement setting that rent. He also emphasized that the MFRC "has no business in this court, [that the MFRC was] trying to usurp the [authority] of the Superior Court . . . by inserting [itself] into this case," and that the MFRC was "blurring the line between being an adjudicator and being an advocate for the tenant by seeking to intervene . . . ." Counsel spent very little time explaining how intervention would cause the plaintiff prejudice, beyond mentioning that "there [was] something to say of the prejudice [because of] the amount of time it's going to take."

With respect to the MFRC's interest in the case, the trial court observed on a number of occasions during the hearing that the summary process action and the fair rent proceedings (and the pending appeals thereof) involved overlapping issues regarding "what the fair rent is . . . or [whether there was] nonpayment of rent," as well as the defendant's retaliation claims. The court noted that the summary process action is, "from [the MFRC's] perspective, a sidestep of [the MFRC's] jurisdiction, [which] would undermine [the MFRC's] authority to enforce [its] legal orders." Thus, the court reasoned, the MFRC had an interest in "protecting [its] lawful orders . . . [its] authority . . . [and its] jurisdiction," and in safeguarding its "legal right to protect the interest of [its] orders" by arguing that conducting summary process proceedings under these circumstances "might be impeding on [the MFRC's] jurisdictional authority . . . ." The trial court also observed that the MFRC's interests were supported by a "public policy rationale" in favor of protecting the MFRC's authority to issue orders setting proper amounts for rent and prohibiting retaliatory conduct by landlords as part of the fair rent statutory scheme. Finally, with respect to prejudice, the court stated that, "[i]n this case . . . use and occupancy

fees are being paid . . . just not . . . at the rate that [the plaintiff claims it is] legally entitled to, and that interest is protected later on because, if [the plaintiff] prevail[s], [it] can then seek [a] deficiency judgment or a judgment for the difference in rent . . . ."

Guided by our precedent in *Local 1566*, as well as rule 24 (b) (2) of the Federal Rules of Civil Procedure and federal cases such as *United States Realty & Improvement Co.*, we construe the rules governing permissive intervention liberally as applied to a governmental agency such as the MFRC when it seeks, as here, to intervene in a case that may impact the proper construction and application of the statutes that delineate its powers, proper operation, or enforcement authority. Similar to the treatment of the governmental intervenors in *Local 1566* and *United States Realty & Improvement Co.*, with respect to the statutes at issue in those cases, the trial court in this case did not abuse its discretion in finding that the MFRC has a substantial institutional interest in litigating in support of a construction of the fair rent statutory scheme that it considers necessary to properly exercise its authority to issue orders in the public interest, as expressed in that legislation. See *Milford* v. *Local 1566, Council 4, AFSCME,* supra, 200 Conn. 94–95 ("[a]lthough the board does not have an interest in whether the award is ultimately vacated or confirmed, it has a significant interest in protecting the validity of the procedures used to determine the award"); see also *Securities & Exchange Commission* v. *United States Realty & Improvement Co.*, supra, 310 U.S. 460 ("the [SEC] ha[d] a sufficient interest in the maintenance of its statutory authority and the performance of its public duties"). Contrary to the plaintiff's assertion, the trial court was acting well within its discretion to conclude that the MFRC was not intervening as an advocate for the defendant but, rather, to promote its own institutional interests, reflecting a broader perspective than that offered by the individual defendant.[18]

[18]The New Haven Legal Assistance Association, the Connecticut Fair Housing Center, the Connecticut Veterans Legal Center, and the Center for Children's Advocacy, as amici curiae, filed a brief with this court,

We have considered all of the other arguments raised by the plaintiff and conclude that they are without merit. First, the plaintiff argues that the MFRC cannot intervene in the absence of express statutory authority. That claim is demonstrably incorrect. If a statute expressly provides a right of intervention, of course then a court must comply with that directive. See, e.*g.*, *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 419, 908 A.2d 1033 (2006) ("the town [had] the right to intervene . . . in the judicial review of the decisions of its wetlands agency and its zoning commission" pursuant to General Statutes § 22a-19). We are aware of no authority, however, supporting the converse proposition, i.e., that permissive intervention is prohibited in the absence of such a statutory provision. To the contrary, the governmental intervenor in *Local 1566* was permitted to intervene in the absence of any such statutory right. See *Milford* v. *Local 1566, Council 4, AFSCME*, supra, 200 Conn. 93–94. We consider it persuasive in this regard that rule 24 (b) (1) (A) of the Federal Rules of Civil Procedure provides for permissive intervention by any person possessing a conditional right of intervention by statute, but rule 24 (b) also allows a court to grant permissive intervention in the absence of any express statutory right. See Fed. R. Civ. P. 24 (b) (1) (B) (applicable to private and governmental intervenors); Fed. R. Civ. P. 24 (b) (2) (applicable to governmental intervenors).

Second, the plaintiff contends that *Local 1566* is distinguishable from the present case because the intervenor's interest in that case (specifically, the validity of the board's orders) would have been directly affected by the decision whether to vacate the board's arbitration award. This argument misconstrues our reasoning in *Local 1566* and misapprehends the interests of the MFRC at stake in the present case. Although it is true that the validity of the board's arbitration decision was directly at stake in *Local 1566*, this court specifically remarked that "the board does *not* have an interest in

indicating that the position taken by the MFRC in this case would support the purpose and functioning of all fair rent commissions, not just the MFRC.

whether the award is ultimately vacated or confirmed" but, instead, "has a significant interest in protecting the validity of the procedures used to determine the award. To vacate the award on the basis that the arbitrators were not sworn as required by law calls into question the legality of the board's proceedings and, by implication, jeopardizes the validity of almost all of its arbitration decisions." **(Emphasis added.)** *Milford* v. *Local 1566, Council 4, AFSCME*, supra, 200 Conn. 94–95. In the present case, although the MFRC's finding of retaliation, its fair rent determination, and its cease and desist orders and fines are not directly subject to review or reversal in the summary process action, the trial court's adjudication, if conducted in the ordinary course, seems certain to directly affect the impact of those findings and orders as a practical matter.[19]

Third, the plaintiff argues that the trial court abused its discretion because it granted intervention based on considerations of judicial economy, which the plaintiff contends is impermissible because the *Rosado* factors do not include such considerations. To the contrary, considerations of efficiency are implicated by a number of the *Rosado* factors that are used to decide whether to allow permissive intervention, including not only the timeliness of the intervention and the question of

[19]The plaintiff also argues that the MFRC should not be allowed to intervene because the MFRC's interests in the summary process action are adequately represented by the defendant. Specifically, the plaintiff contends that the experience and quality of the defendant's counsel render the MFRC's intervention unnecessary and that the MFRC would present the same arguments as the defendant. This assertion overlooks the fact that the MFRC has a broad, institutional interest that is distinct from the defendant's personal interest in retaining possession, and it fails to address whether the defendant will adequately represent that broader interest. Moreover, "[t]he burden for establishing inadequate representation of similar interests is minimal. Indeed, the United States Supreme Court ha[d] acknowledged [in *Trbovich* v. *United Mine Workers of America*, 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972)] that [a proposed intervenor will satisfy this requirement if it] shows that representation of [its] interest *may* be inadequate . . . ." (Emphasis in original; internal quotation marks omitted.) *Altavista Investments, LLC* v. *Makeeva*, 226 Conn. App. 175, 188, 317 A.3d 850 (2024).

prejudicial delay, but also the "value of the intervention in resolving the controversy." **(**Internal quotation marks omitted.**)** *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 276 Conn. 226. In contemplating how the MFRC's intervention would impact the interests in the administration of justice, the trial court properly considered whether intervention would be useful to the court in deciding the case and whether it could permit intervention while avoiding prejudice and delay.[20]

The plaintiff argues that this court must step in to prevent the trial court in this case from "abdicating its exclusive . . . jurisdiction" over summary process matters by allowing the MFRC to "usurp" the court's proper role, especially because the MFRC itself had no jurisdiction to issue any orders at all in connection with the defendant's fair rent complaint. The reality is that the trial court at this point has done nothing more than exercise its broad discretion to allow the MFRC to intervene in the summary process action. That decision in no way signals either an abdication of responsibility by the trial court or any prejudgment of the merits of any issue in dispute, including the validity or effect of the orders issued by the MFRC.

---

[20] The trial court recognized that the overlapping issues in the summary process action and the pending administrative appeals also necessitated prudent docket management and attention to judicial economy due to the risk of duplicative work and conflicting decisions arising in the different proceedings. Although the MFRC in its motion to intervene also moved for a dismissal or stay of the summary process action pending the outcome of the administrative appeals, the trial court has yet to decide any motion to dismiss or to stay the summary process proceedings. As we explained in *TOV Realty, LLC*, considerations of judicial economy are proper in ordering a stay of a summary process action while an administrative appeal of a fair rent commission decision involving the same parties and premises is pending. See *TOV Realty, LLC* v. *Suarez*, supra, 354 Conn. 763–65. We affirmed the decision granting a stay in *TOV Realty, LLC*, to ensure an "efficient use of judicial resources given the effect that the [fair rent] commission's decision may have on critical issues in the summary process action." Id., 764. We reasoned that a stay of the summary process action was proper, in part, because "the outcome of the administrative appeal could bear on the merits of the defenses raised by the [tenant] in the summary process action" and

Given the trial court's full consideration of the *Rosado* factors and its broad discretion to grant permissive intervention, the plaintiff has failed to demonstrate that the trial court "decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors." (Internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 276 Conn. 224–25. There was no abuse of discretion.

The decision of the trial court is affirmed.

In this opinion the other justices concurred.

---

because of the "risk of inconsistent decisions concerning the same parties and premises." Id. Although there has been no motion for consolidation in the present case, we also noted in *TOV Realty, LLC*, that consolidation of the summary process action and the pending administrative appeal in that case would have been an alternative means for addressing concerns about judicial economy, perhaps obviating any need for intervention by a fair rent commission in the summary process action. See id., 765 n.14.